T.C. Memo. 2016-54

UNITED STATES TAX COURT

RICHARD R. REHN AND DEBORAH S. WHEELER, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4805-11L.                    Filed March 24, 2016.

<u>Maris Baltins</u>, for petitioners.

<u>Catherine Lee Campbell</u>, for respondent.

MEMORANDUM OPINION

PUGH, <u>Judge</u>:  Petitioners, while residing in Arizona, petitioned the Court

for review of respondent's two Notices of Determination Concerning Collection

Action(s) Under 6320 and/or 6330,[1] sustaining the Notice of Intent to Levy and

_____

[1] Unless otherwise indicated all section references are the Internal Revenue

(continued...)

[*2] the filing of a Notice of Federal Tax Lien with respect to petitioners'

outstanding Federal income tax liabilities for 2007 and 2008.  Currently, this case

is before the Court on respondent's Motion for Summary Judgment under Rule

121(a), filed August 7, 2014.  The Court ordered petitioners to respond to the

motion, and they did so; and a hearing on the motion was held on March 16, 2015.

The issue for decision is whether respondent may proceed with the collection

action identified in the notices of determination.

## Background

The following facts are based on the parties' pleadings and respondent's

motion, including the attached affidavits and exhibits.  On March 31, 2009,

respondent issued a Notice of Federal Tax Lien Filing and Your Right to a

Hearing Under IRC 6320 (lien notice) to petitioners with respect to their

outstanding 2007 Federal income tax liability.  On April 21, 2009, respondent

issued a Final Notice of Intent to Levy and Notice of Your Right to a Hearing

(levy notice) to petitioners with respect to their outstanding 2007 Federal income

tax liability.  In response, on May 12, 2009, petitioners mailed to respondent Form

12153, Request for a Collection Due Process or Equivalent Hearing, for the 2007

---

[1](...continued)
Code of 1986, as amended and in effect at all relevant times.  Rule references are
to the Tax Court Rules of Practice and Procedure.

[*3] tax year. In an attachment to Form 12153 petitioners wrote: "[T]he filing of a [F]ederal tax lien will cause an economic hardship to the taxpayers".[2] On December 17, 2009, respondent issued a lien notice to petitioners for their 2008 tax year. In response, Mr. Rehn mailed to respondent Form 12153 for that year.

In letters dated March 9, 2010, Settlement Officer Carleen Powers (SO Powers) informed Mr. Rehn that the Appeals Office had received his request for an administrative hearing and scheduled a telephonic equivalent hearing for tax year 2007 and a telephonic administrative hearing for tax year 2008 for March 30, 2010. On March 9, 2010, SO Powers informed Ms. Wheeler of her telephonic administrative hearing for tax year 2007 for March 30, 2010.[3] The letters stated that the telephonic hearing would be the primary opportunity to discuss the collection action. On March 24, 2010, petitioners submitted Form 656, Offer in

---

[2] Because petitioners' hearing request as to the 2007 lien notice was not timely, they received an equivalent hearing only. Sec. 301.6330-1(c)(2), Q&A-C7, (i)(1), Proced. & Admin. Regs. We do not have jurisdiction to review respondent's decision letter regarding that lien notice, see Severo v. Commissioner, 129 T.C. 160, 163 (2007), aff'd, 586 F.3d 1213 (9th Cir. 2009), nor did petitioners seek review in their petition. We discuss it here because the hearings on the lien notice and the levy notice were combined before Appeals and therefore the administrative record addresses both.

[3] On May 3, 2011, respondent filed a Motion to Dismiss for Lack of Jurisdiction and to Strike as to Deborah S. Wheeler for the 2008 taxable year. On May 23, 2011, we granted respondent's motion.

[*4] Compromise (OIC), with respect to their 2003, 2004, 2007, and 2008 outstanding Federal income tax liabilities, citing as grounds both "Doubt as to Collectibility" and "Effective Tax Administration". Petitioners also submitted Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals. On Form 433-A, petitioners listed zero income and over $19,000 in monthly expenses as well as two different addresses for real property owned, rented, or leased. Petitioners also submitted Form 433-B, Collection Information Statement for Businesses.

During the March 30, 2010, telephonic hearing, SO Powers informed petitioners that they were not current with their estimated tax payments for 2009 and that in the event their 2009 return showed a deficiency, their OIC would be rejected. SO Powers also informed petitioners that their expenses exceeded the allowable amounts for vehicle, housing, utilities, and out-of-pocket medical expenses. SO Powers requested Forms 433-A for both households, stating she needed to know which children lived with which parent. As to the 2009 tax liability, petitioners' counsel stated that no tax would be owed for 2009 and therefore estimated tax payments were not required.

The administrative record does not show a response to SO Powers' request. Petitioners' case then was transferred to Settlement Officer Laura Lisanti (SO

[*5] Lisanti). SO Lisanti's notes in the case activity report record included her initial conclusion that expenses for maintenance for two households were not necessary absent a special circumstance. On August 3, 2010, SO Lisanti left a voice mail with petitioners' counsel advising him that petitioners had 10 days to pay estimated tax for 2009 and 2010 or their OIC would be rejected.

A December 15, 2010, letter from SO Lisanti informed petitioners that the Appeals Office had received their request for an administrative hearing and scheduled a telephonic hearing for the 2007 levy and the 2008 lien notice for January 11, 2011. The letter also requested Form 433-A from petitioners along with recent Federal income tax returns and proof of estimated tax payments for 2010. A second "demand" letter with that same date also indicated that petitioners had an outstanding 2009 Federal income tax liability and were not current with their 2010 estimated Federal income tax payments, which caused respondent to reject petitioners' OIC. SO Lisanti advised petitioners that the Appeals Office would sustain the rejection of the OIC unless petitioners made payments to bring themselves into compliance with respect to their 2009 income tax liability and 2010 estimated tax liability (totaling $30,456.16) by December 31, 2010.

By voice mail December 31, 2010, and followup letter and telephone conversation on January 3, 2011, petitioners' counsel asked SO Lisanti to transfer

[*6] the case to Seattle, Washington, for a face-to-face hearing. SO Lisanti discussed the request with her supervisor, and her supervisor recommended against transfer because it appeared to be more for the convenience of petitioners' counsel than for petitioners. Petitioners did not provide any other written response to the December 15, 2010, letters.

In the second telephonic administrative hearing ultimately held on January 13, 2011, SO Lisanti informed petitioners' counsel that petitioners were behind in their estimated tax payments and did not qualify for a face-to-face hearing. She asked whether petitioners had any issues to discuss other than their request for a transfer and a face-to-face hearing, and petitioners' counsel said they did not.

On January 26, 2011, the determination notices sustaining the disputed collection actions were issued. On November 27, 2012, the Court remanded the case to clarify what constituted the administrative record. On March 26, 2013, respondent issued a Supplemental Notice of Determination Concerning Collection Action(s) Under 6320 and/or 6330, after a hearing with petitioners' counsel on March 12, 2013, on the administrative record. The parties agreed at the hearing before the Court on March 16, 2015, that the administrative record before us is the complete record.

**[*7]**                                    <u>Discussion</u>

I. <u>Summary Judgment</u>

Where the material facts are not in dispute, a party may move for summary

judgment to expedite the litigation and avoid an unnecessary (and potentially

expensive) trial. <u>Fla. Peach Corp. v. Commissioner</u>, 90 T.C. 678, 681 (1988).

Summary judgment may be granted where there is no genuine dispute of material

fact, and a decision may be rendered as a matter of law. Rule 121(a) and (b); <u>see</u>

<u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. 518, 520 (1992), <u>aff'd</u>, 17 F.3d 965

(7th Cir. 1994).

We have reviewed respondent's motion and the documents submitted in

support, and we have considered petitioners' response and the arguments of the

parties at the March 16, 2015, hearing. While petitioners vigorously sought a trial,

they agreed at the hearing that our review is limited to the administrative record.

<u>See</u> <u>Keller v. Commissioner</u>, 568 F.3d 710, 718 (9th Cir. 2009), <u>aff'g</u> T.C. Memo.

2006-166, <u>and aff'g and vacating</u> decisions in related cases. They also agreed that

the administrative record before us is complete and did not identify any material

factual disputes about the administrative record for trial.[4] We are satisfied,

_____

[4] Petitioners sought, alternatively, to cross-examine the settlement officers
or to strike portions of the administrative record relating to the actions of the

                                                        (continued...)

**[\*8]** therefore, that we may decide this case on summary judgment and that for the

reasons summarized below, respondent is entitled to a decision as a matter of law

with respect to the collection actions here.

---

[4](...continued)
settlement officers. Because <u>Keller v. Commissioner</u>, 568 F.3d 710, 718 (9th Cir. 2009), <u>aff'g</u> T.C. Memo. 2006-166, <u>and aff'g and vacating</u> decisions in related cases, limits our review to the administrative record generally, we sought to clarify petitioners' position at the March 16, 2015, hearing. Petitioners argued that cross-examination was necessary to illustrate that the settlement officers did not consider petitioners' economic hardship and without that the administrative record would be misleading. But petitioners also claimed that everything they submitted on economic hardship was included in the administrative record, and a careful review would show that the settlement officers did not consider that information.

We are bound by the administrative record, and petitioners have not claimed that there are misstatements (save an immaterial one about whether counsel asked for or demanded a transfer of the case). Therefore, we are not convinced that the testimony would be relevant or appropriate here, and we also do not believe it would be appropriate to strike portions of the administrative record. Indeed, as we explained at the hearing, petitioners' argument is that the administrative record will show that their economic hardship was not considered. Therefore we will deny petitioners' Motion to Compel Respondent to Disclose Address, filed February 27, 2015, and petitioners' Motion to Strike, filed March 6, 2015. Our findings on what the administrative record shows about what was submitted and what was done with the submitted information appear below.

Finally, as to petitioners' Motion in Limine, filed March 6, 2015, to exclude the transcripts for years after the ones involved in the notice of determination (namely the transcripts for petitioners' 2010, 2011, 2012, and 2013 tax years), we agree those should be excluded, as they include information not part of the administrative record, and therefore will grant petitioners' motion.

**[*9]** II.  <u>Analysis</u>

Where (as here) there is no dispute as to the taxpayer's underlying liabilities, we review the Appeals Office's determination for abuse of discretion. <u>Goza v. Commissioner</u>, 114 T.C. 176, 182 (2000); <u>see also</u> <u>Sego v. Commissioner</u>, 114 T.C. 604, 609-610 (2000).  An abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law.  <u>See</u> <u>Murphy v. Commissioner</u>, 125 T.C. 301, 320 (2005), <u>aff'd</u>, 469 F.3d 27 (1st Cir. 2006).  A decision on the basis of an erroneous view of the law or a clearly erroneous assessment of facts would constitute an abuse of discretion.  <u>Keller v. Commissioner</u>, 568 F.3d at 716.

A.  <u>Failure To Be Current</u>

According to petitioners, at the time the OIC was submitted there was no indication that they were not in compliance with their Federal income tax obligations and, therefore, sustaining the rejection of the OIC was an abuse of discretion.  It is not an abuse of discretion for an Appeals Office to consider a taxpayer ineligible for an OIC because of failure to be current on estimated tax payments.  Secs. 301.6320-1(d)(2), Q&A-D8, 301.6330-1(d)(2), Q&A-D8, Proced. & Admin. Regs. ("[T]he IRS [Internal Revenue Service] does not consider offers to compromise from taxpayers who have not filed required returns or have

[*10] not made certain required deposits of tax[.]"); see Giamelli v. Commissioner, 129 T.C. 107, 111-112 (2007) (holding that reliance on a failure to pay current taxes in rejecting a collection alternative does not constitute an abuse of discretion); Friedman v. Commissioner, T.C. Memo. 2013-44, at *8 (holding that the settlement officer did not abuse his discretion by refusing the taxpayers' collection alternative when they failed to make their estimated tax payments).

There is no dispute that at the time that petitioners' OIC was rejected, they had an outstanding 2009 Federal income tax liability and were not current with their 2010 estimated Federal income tax payments. The administrative record establishes that petitioners were informed multiple times before their offer was rejected that they needed to be in compliance and later that they were not current with their 2009 and 2010 tax obligations.

The fact that petitioners might have been in compliance at the time they filed their OIC (in that their Federal income tax return for 2009 was not yet due, and they claimed at the time that no tax would be due for 2009 so no estimated tax payments were required) has no bearing on our determination of whether rejection of their OIC was an abuse of discretion, because they did not remain in compliance and had not come back into compliance at the time of Appeals' consideration and ultimate rejection of their collection alternative. Our opinions

**[\*11]** have consistently held that rejecting a collection alternative is not an abuse of discretion if the taxpayer is not in compliance at the time of Appeals consideration. See, e.g., Scharringhausen v. Commissioner, T.C. Memo. 2008-26 (holding that rejecting a taxpayer's OIC was not an abuse of discretion when he was not current with his tax payments). As was explained in Orum v. Commissioner, 412 F.3d 819, 821 (7th Cir. 2005), aff'g 123 T.C. 1 (2004):

> It would not do the Treasury any good if taxpayers used the money owed for 2004 to pay taxes due for 1998, the money owed for 2005 to pay taxes for 1999, and so on. That would spawn more collection cycles yet leave a substantial unpaid balance. The Service's * * * [IRS] goal is to reduce and ultimately eliminate the entire tax debt, which can be done only if current taxes are paid while old tax debts are retired. * * *

Indeed, as the record before us demonstrates, a failure to be in compliance before Appeals consideration is not fatal; the IRS gives a taxpayer an opportunity to come into compliance (and sometimes, as here, more than one opportunity) before rejecting a collection alternative for noncompliance. Petitioners seem to object that the settlement officer rejected their offer because they were not in compliance, but they were warned repeatedly of the consequences. Therefore, we conclude that the settlement officer did not abuse her discretion in sustaining the collection actions on the basis of petitioners' failure to be in compliance with their tax obligations.

**[\*12]** B.  <u>Face-to-Face Hearing</u>

Petitioners also argue that the settlement officer abused her discretion by not granting petitioners' request for a face-to-face hearing.  A face-to-face hearing is not a requirement under section 6330.  <u>See</u> <u>Katz v. Commissioner</u>, 115 T.C. 329, 337-338 (2000) (holding that a hearing by telephone or by correspondence is sufficient to satisfy the requirements under section 6330); secs. 301.6320-1(d)(2), Q&A-D6, Q&A-D7, 301.6330-1(d)(2), Q&A-D6, Q&A-D7, Proced. & Admin. Regs.  We also have held that a taxpayer must provide required returns or make required deposits of tax to be eligible for a face-to-face hearing.  <u>See</u> <u>Campbell v. Commissioner</u>, T.C. Memo. 2013-57, at \*17 (holding that it is not an abuse of discretion for a settlement officer to deny a taxpayer's request for a face-to-face hearing when a taxpayer fails to supply proof of estimated tax payments); <u>see also</u> sec. 301.6330-1(d)(2), Q&A-D8, Proced. & Admin. Regs.  Petitioners were not current with their tax payments, and therefore the settlement officer did not abuse her discretion in denying a face-to-face hearing.

C.  <u>Economic Hardship</u>

Petitioners also assert that the settlement officer ignored their claim of economic hardship and that this constitutes an abuse of discretion.  Section 6343(a)(1)(D) directs the Commissioner to release a levy upon all, or part of, a

[*13] taxpayer's property if he determines that a levy would cause economic hardship to the taxpayer. A levy causes economic hardship when the taxpayer would be unable to pay reasonable basic living expenses. Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs. When reviewing a claim of economic hardship, the settlement officer considers relevant circumstances such as the taxpayer's age, ability to earn an income, number of dependents, and status as a dependent. Id. subdiv. (ii)(A). Reasonable basic living expenses are based on the taxpayer's circumstances but do not include amounts needed to maintain a luxurious standard of living. Id. subdiv. (i). For the settlement officer to consider economic hardship taxpayers cannot just claim they would suffer economic hardship; taxpayers must submit complete and current financial information. See Picchiottino v. Commissioner, T.C. Memo. 2004-231, 2004 WL 2284376, at *5, *6.

At the hearing before the Court on March 16, 2015, petitioners stated that respondent "didn't want to talk about * * * [economic hardship]." Petitioners also stated that during the telephonic hearings they "asked respondent to consider all the documents submitted" and that petitioners "discussed economic hardship * * * all along."

**[\*14]** The administrative record shows petitioners claimed economic hardship in their written correspondence. In an attachment to Form 12153, petitioners state: "[T]he filing of a Federal tax lien will cause an economic hardship to the taxpayers, destroying their ability to continue operation of their business which in turn will result in these taxpayers being unable to pay their reasonable basic living expenses". Petitioners also submitted Forms 433-A and 433-B and a number of financial documents in support.

The administrative record also shows that neither SO Powers nor SO Lisanti ignored the financial information petitioners submitted. On March 30, 2010, SO Powers informed petitioners during the telephonic hearing that their expenses exceeded the allowable amounts for vehicle, housing, utilities, and out-of-pocket medical expenses and requested Form 433-A for petitioners' two households, stating that she needed to know which children lived with which parent. The forms were not submitted. At an administrative hearing a taxpayer is expected to provide relevant information required by the Appeals Office for its consideration of the facts and issues involved in the hearing. Sec. 301.6330-1(e)(1), Proced. & Admin. Regs.

The administrative record also shows that SO Lisanti noted that expenses for the maintenance of two households were not necessary expenses absent a

[*15] special circumstance. Her December 15, 2010, letter regarding the January 2011 administrative hearing also requested Form 433-A from petitioners. As of January 11, 2011, petitioners had failed to submit a new Form 433-A or other documentation responding to the questions raised regarding the level of expenses for the two households. Finally, the case activity report notes that SO Lisanti asked petitioners' counsel in their last January 13, 2011, telephonic conference whether there were any issues other than the request that petitioners be granted a face-to-face hearing in Seattle, Washington. He indicated there were not.

We therefore conclude that petitioners put forward financial information regarding economic hardship and that the settlement officers reviewed the available financial information. Petitioners disagree with the decision reached by the settlement officers and seem frustrated that the settlement officers sought more information and that they would not agree to another hearing, this time face to face in a different city, in which petitioners apparently planned to discuss their economic hardship. But we cannot conclude that the request for additional information was an abuse of discretion. We do not conduct an independent review and substitute our judgment for that of the settlement officer. Murphy v. Commissioner, 125 T.C. at 320. While petitioners claim they were not given a chance to discuss economic hardship, the record shows that they had two

**[\*16]** telephonic hearings and were afforded opportunities to submit additional information. We accept petitioners' response that the settlement officer would not discuss economic hardship in the final conversation with petitioners' counsel, but that petitioners' failure to provide additional requested financial information, including, for example, an explanation for the large amounts of their household expenses, meant that the settlement officer could not determine whether their living expenses were reasonable. See sec. 301.6343-1(b)(4), Proced. & Admin. Regs. Although the notice of determination does not address economic hardship (citing instead failure to provide updated financial information), we cannot conclude on this record that the decision to uphold the proposed collection actions was based on an erroneous view of the law or a clearly erroneous assessment of facts under Keller v. Commissioner, 568 F.3d at 716.

D. Meaningful Administrative Hearing

Petitioners argue that they did not receive a "meaningful * * * [administrative] hearing". In determining whether a settlement officer abused her discretion the Court considers whether the taxpayer's concerns have been properly addressed in an administrative hearing. Lewis v. Commissioner, T.C. Memo. 2012-138, 2012 WL 1727625. For example, in Lewis, the taxpayer requested a face-to-face administrative hearing in response to a levy notice because of the

[*17] complex nature of his case.  After submitting his financial documents, the taxpayer was assigned a nearby settlement officer for a face-to-face hearing.  Id., 2012 WL 1727625, at *2.  The settlement officer did not afford the taxpayer even a telephonic hearing but rather had one 10.5-minute telephone conversation to discuss the taxpayer's request for a face-to-face hearing, during which the officer requested more documents.  Id.  The taxpayer testified that he mailed an assortment of financial documents to the settlement officer.  Id. at *3.  The settlement officer never received them and never followed up.  Id.  After 103 days, the settlement officer still had not received the additional documents.  He issued a notice of determination sustaining the proposed levy based solely on the taxpayer's failure to provide the requested information.  Id.  The Court recognized that each individual defect standing alone might be insufficient to find an abuse of discretion, but that "the cumulative effect of such defects demonstrate[d] that * * * [the settlement officer] acted both arbitrarily and capriciously in rendering his determination."  Id. at *5.

The facts before us are not similar to the facts in Lewis.  SO Powell indicated that the telephonic conferences constituted the administrative hearing.  Letters dated March 9 and December 15, 2010, stated that the scheduled telephonic conferences were petitioners' primary opportunities to discuss the

**[*18]** collection action. Petitioners' original telephonic administrative hearing took place on March 30, 2010, with an additional telephonic hearing on January 13, 2011. In both hearings petitioners were represented by counsel. As we discuss above, the administrative record shows that the settlement officers considered financial information petitioners submitted and requested more information that petitioners did not provide.

Petitioners argue that they wanted a face-to-face hearing in Seattle, Washington, to accommodate them. The administrative record shows that SO Lisanti discussed with her supervisor transferring the case to Seattle, Washington. The supervisor advised SO Lisanti to decline the transfer because it appeared to be more for the convenience of petitioners' counsel than of petitioners. SO Lisanti informed petitioners that a transfer to Seattle would be declined because they did not qualify for the collection alternative they were seeking. SO Lisanti also asked petitioners' counsel whether he wished to discuss issues other than the request for a face-to-face hearing, but he did not. Petitioners also were advised repeatedly of the consequence of failure to be in compliance with current tax obligations. On the record before us, we cannot conclude that the settlement officer abused her discretion and denied petitioners a meaningful hearing.

**[\*19]** Finally we note that at the March 16, 2015, hearing on respondent's Motion for Summary Judgment counsel for petitioners indicated that their financial condition had improved and sought to negotiate a resolution. While we sustain respondent's notice of determination, petitioners are still free to negotiate a resolution with respondent that may not be subject to judicial review as to the years before us.

We also have considered petitioners' argument that respondent's motion was barred by our prior order denying summary judgment. Petitioners incorrectly read a denial of a motion "not appropriate at this time" to be a denial for all time. We do not believe the phrase "not appropriate at this time" can be so construed and in any event will grant respondent's motion for the reasons stated above. We have considered all arguments made in reaching our decision and, to the extent not discussed above, we conclude that they are moot, irrelevant, or without merit.

## Conclusion

On the basis of our review of the administrative record and notice of determination, the Court concludes that the settlement officers satisfied the verification requirements of section 6330, that there is no genuine dispute as to any material fact, and that a decision may be rendered as a matter of law.

[*20]         To reflect the foregoing,

<u>An order and decision will be</u>

<u>entered for respondent</u>.