148 T.C. No. 9

UNITED STATES TAX COURT

LINDSAY MANOR NURSING HOME, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24596-14L. Filed March 23, 2017.

At its CDP hearing P, a corporate taxpayer, challenged the appropriateness of a proposed levy on the grounds that the levy would create economic hardship because of the financial condition of P. R's settlement officer (SO) did not consider P's economic hardship argument because P is a corporate taxpayer and sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs., limits economic hardship relief to individual taxpayers.

P asserts in a motion for summary judgment that sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs., is invalid because it conflicts with I.R.C. sec. 6343(a)(1)(D) and that because the regulation is invalid the SO abused her discretion when she did not consider whether a levy would create economic hardship for P, a corporate taxpayer. I.R.C. sec. 6343(a)(1)(D) requires the Secretary to release a levy if "the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer." Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs., defines economic hardship as certain circumstances suffered by individual taxpayers.

Held: I.R.C. sec. 6343(a)(1)(D) is silent or ambiguous on this issue, and sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs., is based upon a permissible interpretation of the statute. Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs., is a valid regulation.

Held, further, I.R.C. sec. 6330(c)(3)(C) sets forth a balancing test which properly takes into account for all taxpayers the economic realities and consequences of proposed collection actions.

Held, further, P's motion for summary judgment will be denied in part.

David J. Looby, for petitioner.

Ann Louise Darnold, for respondent.

OPINION

PARIS, Judge: This case is before the Court on petitioner's motion for summary judgment under Rule 121.[1] The issue for decision is whether section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., is valid.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

The record reflects or the parties do not dispute the following. Petitioner's principal place of business was in a rural community of fewer than 3,000 residents in Oklahoma at the time the petition was filed. Petitioner operates a nursing home facility.

### I. Employment Tax at Issue

Petitioner timely filed its Form 941, Employer's Quarterly Federal Tax Return, for the quarterly period ended December 31, 2013, but failed to pay its tax liability for that quarter. On April 14, 2014, respondent assessed the tax of $108,911 reported on the return.

### II Proposed Levy on Petitioner's Property

On April 24, 2014, respondent issued to petitioner a Letter 1058, Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing (levy notice). The levy notice reflected respondent's intent to levy on petitioner's property and rights to property to collect the employment tax liability assessed against it. The levy notice also informed petitioner of its right to a collection due process hearing (CDP hearing) with the Internal Revenue Service Appeals Office (IRS Appeals) before respondent levies on petitioner's property.

III.   Petitioner's Request for Economic Hardship Relief

Petitioner timely submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing (CDP request), on May 7, 2014. IRS Appeals assigned petitioner's case to Settlement Officer Alcorte (SO Alcorte). SO Alcorte issued to petitioner a letter dated July 28, 2014, scheduling a CDP hearing for August 21, 2014. On August 20, 2014, petitioner faxed to SO Alcorte a Form 433-B, Collection Information Statement for Businesses, and supporting documentation which demonstrated that petitioner had not received a total of $306,598.61 in accounts receivable due from Medicare, Medicaid, insurance, and private pay for the period April 30 through June 30, 2014.[2]

Also on August 20, 2014, petitioner faxed a letter to SO Alcorte challenging the appropriateness of the proposed levy on the ground of economic hardship. In the letter petitioner claimed respondent was required to release the proposed levy pursuant to section 6343 because the levy would create economic hardship on account of the financial condition of petitioner. Specifically, the letter stated:

> Taxpayer also seeks to challenge the appropriateness of the proposed
> levy on the grounds of economic hardship. As demonstrated by
> Taxpayer's Form 433-B, Collection Information Statement, Taxpayer
> has an outstanding accounts receivable balance of $306,598.61 due to

[2]The record does not reveal what amount of the accounts receivable consisted of potential payments from the referenced Federal Government agencies.

nonpayment of monies billed to Medicare and Medicaid and is currently operating at a net loss. Taxpayer cannot survive an all source levy of the available funding that it does have and still provide essential care services to the patients residing at Taxpayer's nursing facility. Taxpayer has a mandatory obligation, under federal and state law, to provide food, medicine, physical therapy services, linens and bedding, supplies, equipment and certified healthcare providers for its patients. Failure to provide adequate care to these patients can subject Taxpayer to a loss of its license among numerous other civil and criminal penalties.

       \*       \*       \*       \*       \*       \*       \*

[T]he proposed levy on Taxpayer's accounts receivables, Medicaid and Medicare funding, private pay and bank accounts should be released. Such a levy on Taxpayer's essential business property would prevent it from being able to carry on its trade or business (i.e., to provide adequate care and treatment to its patients). Taxpayer would not be able to meet its payroll and other basic necessities, which in turn would result in patients not receiving the needed care from qualified healthcare providers that the law mandates Taxpayer must provide. Simply put, Taxpayer cannot survive or provide essential care services to its patients if the IRS is able to file a levy against every available source of income. As such, Taxpayer asserts that the hardship relief provisions of § 6343 apply to this situation and mandate the release of the proposed levy issued against it.

IV.    <u>The CDP Hearing</u>

On August 21, 2014, a telephone CDP hearing was held between SO Alcorte and petitioner's representative. During the hearing petitioner again challenged the appropriateness of the proposed levy on the ground of economic hardship. SO Alcorte explained to petitioner's representative that she would not

consider petitioner's economic hardship argument because economic hardship relief is not available to corporations.

On September 17, 2014, IRS Appeals issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 to petitioner sustaining the proposed levy for petitioner's taxable quarter ended December 31, 2013 (notice of determination). In the notice of determination SO Alcorte noted petitioner's continuously maintained position that it should be entitled to economic hardship relief pursuant to section 6343(a)(1)(D). SO Alcorte explained that "economic hardship was denied based on the financial statement and supporting documents provided." SO Alcorte quoted from section 6343(a)(1)(D) and section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., which provide for levy relief on the basis of economic hardship; she explained that "[t]his condition applies if satisfaction of the levy in whole or in part will cause an individual taxpayer to be unable to pay his or her reasonable basic living expenses." SO Alcorte did not provide any further explanation as to why petitioner was denied

economic hardship relief.[3]  Petitioner timely petitioned the Court for review of the notice of determination.  See sec. 6330(d).

Petitioner moves the Court for summary judgment on the grounds that:  (1) section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., is invalid because it conflicts with section 6343(a)(1)(D) by redefining the term "taxpayer" to include only individuals and (2) because section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., is invalid, SO Alcorte abused her discretion by failing to consider petitioner's request for levy relief on the basis of economic hardship.[4]

## Discussion

Summary judgment serves to "expedite litigation and avoid unnecessary and expensive trials."  Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court may grant summary judgment upon all or any part of the legal issues in controversy if there is no genuine dispute of material fact.  Rule 121(b); see Naftel

---

[3]The case activity record reflects SO Alcorte's and respondent's position that sec. 6343 and the regulations promulgated thereunder clearly limit economic hardship relief to individual taxpayers.  Presumably, SO Alcorte did not provide any further explanation as to why economic hardship relief was denied because she thought sec. 6343 and the regulations promulgated thereunder were clear that economic hardship relief is not available to corporations.

[4]Although petitioner's motion for summary judgment raises several other arguments regarding SO Alcorte's determination, this Court believes they are best addressed in conjunction with respondent's pending motion for summary judgment, which will be the subject of a separate opinion.

v. Commissioner, 85 T.C. 527, 529 (1985). The moving party bears the burden of proving that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. Bond v. Commissioner, 100 T.C. 32, 36 (1993); Naftel v. Commissioner, 85 T.C. at 529. In deciding whether to grant summary judgment, the Court considers the facts and the inferences drawn from those facts in the light most favorable to the nonmoving party. Bond v. Commissioner, 100 T.C. at 36; Naftel v. Commissioner, 85 T.C. at 529. Because the issue of statutory construction involves a pure question of law and because the parties agree on all facts relevant to the Court's analysis, the Court concludes that summary adjudication is appropriate.

I.      Collection of Federal Tax by Levy

If a taxpayer liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, the Secretary may collect the tax by levy upon all property and rights to property (except any property that is exempt under section 6334) belonging to the taxpayer.[5] Sec. 6331(a).

---

[5]With the exception of jeopardy assessments, see secs. 6861 to 6864 (pertaining to jeopardy assessments), 7429(b)(2)(B) (granting to this Court specific jurisdiction to review such assessments and to provide relief as necessary), Congress did not grant to this Court authority either to review the Secretary's refusal to release a levy or to order the Secretary to release a levy. Nonetheless, this Court has analyzed a SO's evaluation of individual taxpayers'

(continued...)

Section 6343(a)(1)(D) requires the IRS to release a levy upon a taxpayer's property if the Secretary determines that the levy is creating economic hardship because of the financial condition of the taxpayer. As applicable here, section 6343(a)(1)(D) provides:

> SEC. 6343(a). Release of Levy and Notice of Release.--
>
> (1) In general.--Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if--
>
> \* \* \* \* \* \* \*
>
> (D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer * * *

Section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., provides that a levy is creating economic hardship because of the financial condition of an "individual taxpayer" if "satisfaction of the levy in whole or in part will cause an individual taxpayer to be unable to pay his or her reasonable basic living expenses." When

---

[5](...continued) economic hardship arguments in the context of a CDP hearing to determine whether the SO abused his discretion in sustaining the proposed collection action. See, e.g., Vinatieri v. Commissioner, 133 T.C. 392 (2009); Rehn v. Commissioner, T.C. Memo. 2016-54; Gurule v. Commissioner, T.C. Memo. 2015-61; Antioco v. Commissioner, T.C. Memo. 2013-35.

determining a taxpayer's "reasonable basic living expenses", the Secretary

considers any information that the taxpayer claims bears on economic hardship.

See id. subdiv. (ii).

II.     Section 6330 Hearing

At least 30 days before making a levy, the Commissioner must give notice

to the taxpayer of the proposed levy and of the taxpayer's right to a CDP hearing

to appeal it.  Secs. 6330(a), 6331(d).  A taxpayer may appeal the proposed levy to

the IRS under section 6330 by timely requesting a CDP hearing.  See sec.

6330(b)(1).  The CDP hearing must be conducted by an officer or employee who

had no prior involvement with respect to the unpaid tax.  Sec. 6330(b)(3).

During the CDP hearing the taxpayer may raise any relevant issue relating

to the unpaid tax or the proposed levy, including challenges to the appropriateness

of the collection action and collection alternatives such as an installment

agreement or an offer-in-compromise.  Sec. 6330(c)(2)(A).

In connection with the CDP hearing the Appeals officer must verify that the

requirements of applicable law and administrative procedure have been met,

consider issues properly raised by the taxpayer, and consider whether any

proposed collection action balances the need for the efficient collection of taxes

with the taxpayer's legitimate concern that any collection action be no more intrusive than necessary. Sec. 6330(c)(3).

Following the CDP hearing the Appeals officer must determine whether to sustain the proposed collection action. Once a determination is made, the taxpayer may petition the Tax Court for review. Sec. 6330(d)(1).

Where the validity of the underlying tax liability is properly at issue, the Court will review the matter de novo. Sego v. Commissioner, 114 T.C. 604, 610 (2000). Where, as here, there is no dispute concerning the underlying tax liability, the Court reviews the Commissioner's administrative determination for abuse of discretion.[6] Id. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

III.    Petitioner's Request for Economic Hardship Relief

When a "taxpayer" establishes in a prelevy collection hearing under section 6330 that the proposed levy would create an economic hardship, it is unreasonable

---

[6]Regardless of whether petitioner could have contested its underlying liability at the CDP hearing, this Court may consider a challenge to such a liability only if the taxpayer properly raised it before the SO, Giamelli v. Commissioner, 129 T.C. 107, 115 (2007), and again in its petition to this Court, see Rule 331(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded."). Petitioner raised this issue neither with SO Alcorte nor in its petition. The Court accordingly deems it conceded.

for the settlement officer to determine to proceed with the levy, which section

6343(a)(1)(D) would require the IRS to immediately release. Vinatieri v.

Commissioner, 133 T.C. 392, 400 (2009). Rather than proceed with the levy, the

settlement officer must consider collection alternatives. Id. at 401. The record

reflects, and the parties agree, that SO Alcorte did not consider petitioner's request

for economic hardship relief. The parties agree that section 301.6343-1(b)(4)(i),

Proced. & Admin. Regs., limits economic hardship relief to taxpayers who are

individuals. Petitioner argues that section 301.6343-1(b)(4)(i), Proced. & Admin.

Regs., is invalid because it is inconsistent with section 6343(a)(1)(D).

A.    Parties' Arguments

Petitioner reads section 6343(a)(1)(D) to require the Secretary to release a

levy if the levy is creating economic hardship because of the financial condition of

the "taxpayer", section 7701(a)(14) to define "taxpayer" as any "person" subject to

internal revenue tax, and section 7701(a)(1) to define "person" to mean and

include both individuals and corporations. Petitioner contends that section

301.6343-1(b)(4)(i), Proced. & Admin. Regs., redefines the term "taxpayer" as it

is used in section 6343(a)(1)(D) to include only individuals, and thus it is invalid.

Respondent argues that the regulation is valid by pointing to the phrase

"economic hardship" in section 6343(a)(1)(D). "Hardship" is not defined in the

Code, but respondent asserts that the term is defined as "a severe discomfort or lack of the necessities of life, a circumstance causing this", a scenario which can apply only to individuals.  Thus, respondent asserts that a regulation limiting economic hardship relief to individual taxpayers is consistent with section 6343(a)(1)(D) because only individual taxpayers can suffer hardship.

B.      Judicial Review of Agency Statutory Construction--Chevron Review

A court reviews an agency's authoritative construction of a statute under the two-step test first articulated in Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842 (1984).  See Mayo Found. for Med. Educ. & Research v. United States, 562 U.S. 44, 55-58 (2011).  Chevron step 1 requires the Court to determine whether the statute clearly expresses the intent of Congress. Chevron, 467 U.S. at 843.  If Congress' intent is clear, the Court's analysis ends and the congressional intent is given effect. Id. at 842-843.  If the statute is silent or ambiguous with respect to the specific issue before the Court, Chevron step 2 requires the Court to determine whether the regulation is based upon a permissible construction of the statute. Id. at 843.

1.      Chevron Step 1

The first issue is whether section 6343(a)(1)(D) is "silent or ambiguous" on the question at hand such that the agency has room to interpret the statute.

Chevron, 467 U.S. at 843.  In determining whether the statute clearly expresses the

intent of Congress, this Court, the Court of Appeals for the D.C. Circuit, and the

Court of Appeals for the Tenth Circuit use traditional tools of statutory

construction, including the wording of the statute and legislative history.[7]  United

_____

[7]The determination of proper appellate venue of our decisions matters only
in narrow circumstances when the resolution of this issue dictates how we should
apply the law.  See CNT Invs., LLC v. Commissioner, 144 T.C. 161, 183 (2015)
(citing Brewin v. Commissioner, 72 T.C. 1055, 1059 (1979), rev'd and remanded
on other grounds, 639 F.2d 805 (D.C. Cir. 1981)).  Although petitioner's principal
place of business was in Oklahoma at the time its petition was filed and appeal
would ordinarily lie to the Court of Appeals for the Tenth Circuit, the parties did
not stipulate that venue, see sec. 7482(b)(2), and this case does not involve the
"redetermination of tax liability" as described in sec. 7482(b)(1).

The Court of Appeals for the District of Columbia Circuit held in Byers v.
Commissioner, 740 F.3d 668, 675-677 (D.C. Cir. 2014), aff'g T.C. Memo.
2012-27, that under sec. 7482 the Court of Appeals for the District of Columbia
Circuit is the proper appellate venue in collection cases under secs. 6320 and 6330
where the underlying liability is not at issue.  However, the court in Byers further
stated:  "We have no occasion to decide in this case whether a taxpayer who is
seeking review of a CDP decision on a collection method may file in a court of
appeals other than the D.C. Circuit if the parties have not stipulated to venue in
another circuit."  Id. at 677.  Thus appellate venue for this case might properly lie
to the D.C. Circuit.

Following the Byers decision, the IRS issued Chief Counsel Notice 2015-
006 (June 30, 2015), taking the position that appellate venue in CDP cases
properly lies "to the circuit of the petitioner's legal residence, principal place of
business, or principal office or agency."  It advised Chief Counsel attorneys not to
object to venue--whether it was the D.C. Circuit or the proper regional circuit--in
these cases.  Congress amended sec. 7482(b) to provide that for CDP cases, an
appeal properly lies in the circuit of the petitioner's legal residence, principal place
of business, or principal office or agency.  Consolidated Appropriations Act, 2016,
Pub. L. No. 114-113, sec. 423, 129 Stat. at 3123-3124 (2015).  This new

(continued...)

States Sugar Corp. v. EPA, 830 F.3d 579, 605 (D.C. Cir. 2016); Anderson v. DOL,

422 F.3d 1155, 1180 (10th Cir. 2005); see Caltex Oil Venture v. Commissioner,

138 T.C. 18, 34 (2012) ("It is well settled that where a statute is ambiguous, * * *

[the Court] may look to legislative history to ascertain its meaning."). A statute is

ambiguous if it is open to more than one interpretation or if reasonable minds

could differ as to its meaning. Carlson v. Commissioner, 116 T.C. 87, 93 (2001);

Merkel v. Commissioner, 109 T.C. 463, 468-469 (1997), aff'd, 192 F.3d 844 (9th

Cir. 1999); see also Carrieri v. Jobs.com Inc., 393 F.3d 508, 519 (5th Cir. 2004).

In construing a statute, the Court generally gives effect to the plain and ordinary

meaning of its terms. United States v. Locke, 471 U.S. 84, 93 (1985).

---

[7](...continued)
provision, however, is inapplicable because it was enacted after the petition was filed in this case.

In the light of Byers, the Court will be applying the same legal principles to the issues in this case whether the venue for appeal is the Court of Appeals for the D.C. Circuit or the Tenth Circuit. As this Court has previously held: "For us to undertake to resolve the correct appellate venue, inasmuch as it would not affect the disposition of this case, 'would, at best, amount to rendering an advisory opinion. This we decline to do.'" CNT Invs., LLC v. Commissioner, 144 T.C. at 185 (quoting Greene-Thapedi v. Commissioner, 126 T.C. 1, 13 (2006)).

a.     Text of the Statute

As applicable here, section 6343(a) provides:

SEC. 6343(a).  Release of Levy and Notice of Release.--

(1) In general.--Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon * * * if--

*        *        *        *        *        *        *

(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer * * *

The parties dispute whether Congress intended section 6343(a)(1)(D) to require the Secretary to release a levy if the levy will create an economic hardship for a nonindividual taxpayer on account of its financial condition (as determined by the Secretary).  Petitioner's argument hinges on the defined term "taxpayer" while respondent's hinges on the definition of "hardship".

Petitioner is correct that "taxpayer" is a defined term and that Congress could have provided a more restrictive definition.  See sec. 7701(a)(14) (defining "taxpayer" to mean "any person subject to any internal revenue tax"), id. para. (1) (defining "person" to include "an individual, a trust, estate, partnership, association, company or corporation").  But see sec. 1313(b) ("Notwithstanding section 7701(a)(14), the term "taxpayer" means any person subject to a tax under

the applicable revenue law[.]"). Petitioner contends that because "taxpayer" is a defined term and includes both individuals and nonindividuals, Congress intended "taxpayer" in section 6343(a)(1)(D) to have the same definition as in section 7701. When looking at a statute, its plainness or ambiguity is determined not only by the language itself but also by "the specific context in which that language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997).

In construing the term "taxpayer" with reference to the context in which it is used--and looking specifically for clear congressional intent that this provision applies to petitioner's specific situation--the Court notes several points of inquiry arising from the wording of section 6343. The first involves the other instances of the term "taxpayer" in section 6343. The second involves the use of the phrase "economic hardship" in section 6343(a)(1)(D). And the third involves the grammatical structure of section 6343(a). The Court's inquiry on these points leads to the Court's conclusion that section 6343(a)(1)(D) is silent or ambiguous on the crucial issue of whether "taxpayer" includes nonindividuals.

i.     Use of "Taxpayer" in Section 6343

Section 6343 uses the word "taxpayer" eight times. An examination of the contexts of the seven uses apart from that in section 6343(a)(1)(D) does not

provide clarity as to Congress' intent. Subsection (e) provides that "[i]n the case of a levy on the salary or wages payable to or received by the taxpayer, upon agreement with the taxpayer, * * * the Secretary shall release such levy as soon as practicable." The above uses of "taxpayer" almost certainly exclude nonindividuals because of the relationship between "salary or wages" and "taxpayer" in the prepositional phrase "on the salary or wages payable to or received by the taxpayer". Section 6343 has four uses that do not appear to restrict the meaning of "taxpayer". See subsecs. (a)(1)(C), (d)(2)(B) (in the context of installment agreements), subsec. (d)(2)(D) (in the context of interaction with the National Taxpayer Advocate). The last use is relative to the "trade or business" of the taxpayer. Sec. 6343(a)(2). Although individuals and nonindividuals can have a trade or business, section 6334(a)(13) exempts from levy principal residences and tangible personal property or real property used in the trade or business of an individual taxpayer. Thus, it is possible that "taxpayer" in section 6343(a)(2) was intended to follow the definition in section 7701 and provide relief for a nonindividual's trade or businesses; it is also possible that it was intended to provide additional protection to the trade or business of an individual in addition to that which is provided for in section 6334(a)(13).

Regardless of the meaning of the latter five uses, the first two illustrate Congress' inconsistent use of "taxpayer" within section 6343. Accordingly, the Court must look for other context clues to decipher Congress' intended meaning.[8]

### ii. Definition of "Economic Hardship"

Even if "taxpayer" were clearly understood to include individuals and nonindividuals, the words surrounding "taxpayer" in section 6343(a)(1)(D) render Congress' intent unclear. The second point of inquiry is with respect to the definition--or lack thereof--of "economic hardship". There are instances in the Code where Congress saw fit to provide a definition of "significant hardship", e.g., sec. 7811(a)(2), and "business hardship", sec. 412(c)(2); and there are instances where it saw fit to provide discretionary authority to the Secretary to determine whether a "hardship" exists, see, e.g., secs. 150(b)(1)(B), 631. Nowhere in the Code, however, did Congress provide a definition of "economic hardship".[9]

---

[8]Congress did know how to explicitly limit "taxpayer" to individuals. See secs. 7491(b), 6334(a)(13)(B)(ii). However, there are other instances where Congress uses "taxpayer" in an unrestricted manner and contextually limits the meaning of "taxpayer" to individuals. See sec. 7122(d)(2).

[9]The absence of this definition alone could be sufficient for the Court to proceed to Chevron step 2. Perez v. Commissioner, 144 T.C. 51, 59 (2015) ("The Code doesn't define "damages", and so we can swiftly hop up onto Chevron's step two.").

In this instance, however, no definition was required because Congress clearly provided to the Secretary discretion to determine when an economic hardship exists and whether it is caused by the financial condition of the taxpayer as a result of the levy. Respondent urges the Court to read "hardship" to mean "a severe discomfort or lack of the necessities of life, a circumstance causing this"--a scenario which can apply only to individuals--and to treat the regulation's limitation of economic hardship to individuals as a valid and reasonable interpretation of the statute. Although this definition is consistently found in the definition of "hardship", it is usually succinctly stated, as respondent asserts, in abridged dictionaries.[10] The Court is not so easily persuaded. Understanding the plain meaning of a term or phrase often requires more than an abridged dictionary. See, e.g., Wachter v. Commissioner, 142 T.C. 140, 148-149 (2014).

Webster's Third New International Dictionary Unabridged 1033 (1986) defines "hardship" as:

> **1 a :** SUFFERING, PRIVATION <years of danger and ~[hardship]> <inflation was a cause of ~[hardship]> <a life of ~[hardship]> **b :** a particular instance or type of suffering or privation <the losses and

---

[10]Webster's New World College Dictionary 648 (4th ed. 2008) defines "hardship" as "hard circumstances of life"; "a thing hard to bear; specific cause of discomfort or suffering, as poverty, pain, etc." Similarly, the New Oxford American Dictionary 792 (3d ed. 2010) defines "hardship" as "severe suffering or privation".

~[hardship]s . . . entailed by war —Bertrand Russell> <enduring cold, hunger, and other ~[hardship]s> **2 :** something that causes or entails suffering or privation <cannot help thinking it a ~[hardship] that more indulgence is allowed to men than to women —James Boswell> <one of the ~[hardship]s of town life . . . is the absence of spring water —Amer. Guide Series: N. C.> <all the ~[hardship]s of the northern passage —head winds, fog —L.B.Schmidt>

Under these definitions there are two reasonable interpretations of section 6343(a)(1)(D): It provides relief in a broad range of hardship situations, or it provides relief only in situations experienced by individuals. Any person (as defined in section 7701(a)(1)) might experience the effects of "something that causes suffering or privation"; only individuals can suffer a deprivation or lack comfort. The existence of both usages might support the view that Congress intended "taxpayer" in section 6343(a)(1)(D) to be used as defined in section 7701(a)(1) and (14). But it could also be indicative of ambiguity. See Chickasaw Nation v. United States, 534 U.S. 84, 90 (2001) (stating that a statute "is ambiguous * * * [if it is] capable of being understood in two or more possible senses or ways"); Carlson v. Commissioner, 116 T.C. 87, 93 (2001); Merkel v. Commissioner, 109 T.C. 463, 468-469 (1997), aff'd, 192 F.3d 844 (9th Cir. 1999).

Section 6343(a)(1)(D) includes the term "economic hardship". And although the presence of "economic" might seem superfluous because of its proximity to the phrase "the financial condition of the taxpayer", it is a well-

accepted canon of construction that a statute ought to be construed so that no clause, sentence, or word is rendered superfluous, void, or insignificant.  See Duncan v. Walker, 533 U.S. 167, 174 (2001).  This leads the Court to conclude that Congress' use of the adjective "economic" was intended to further define or explicate the meaning of "hardship".

Webster's Third New International Dictionary Unabridged 720 (1986) defines "economic" as:[11]

> **3 a :** of or relating to the science of economics <rejected the ~[economic] doctrines of Ricardo> **:** of, relating to, or concerned with the production, distribution, and consumption of commodities <a program to prevent inflation and ~[economic] collapse> <a council of ~[economic] advisers> **:** MATERIAL <moved exclusively by ~[economic] motives> **b :** having practical or industrial significance, uses, or application <the ~[economic] plants of a region> **:** affecting or liable to affect material resources or welfare <two ~[economic] pests were intercepted by . . . inspectors during recent weeks —Farm Chemicals> **c :** operated or produced on a profitable basis **:** producing an excess of returns over expenditures <reactor types which might be developed to produce ~[economic] power —U.S. Code> **:** capable of or liable to profitable exploitation <~[economic] beds of phosphate are found only under marine conditions —A.M. Bateman> **:** PROFITABLE <barely ~[economic], since she paid a nurse almost as much as she made herself —Elizabeth Janeway>

These definitions are similarly unhelpful in deciphering congressional intent in the context of the Court's inquiry.  Although hardship is limited to only the economic

---

[11]The first two senses of "economic" define "economic" in its archaic form. Therefore, those definitions have been omitted.

type, this modifier does not answer the question of whether this provision is limited in its application to individuals or can also apply to nonindividuals.

Regardless of whether "taxpayer" is as defined in section 7701(a)(1) and (14), section 6343 does not define "economic hardship" or provide sufficient contextual evidence to render its meaning clear. Instead, section 6343 requires the Secretary to determine whether an economic hardship exists; whether the hardship is due to the financial condition of the taxpayer; and whether that financial condition is a result of the imposed levy. Sec. 6343(a)(1)(D). Section 6343(a)(1) also requires the Secretary to prescribe regulations to effect Congress' intended relief.

### iii. An Existing Levy Versus a Future Levy

The third inquiry arises in determining the scope of relief that Congress intended. Petitioner contends that it is entitled to relief under a plain reading of section 6343(a)(1). The wording Congress used, however, seems to indicate contrary intent. Under the applicable portion of section 6343(a)(1), "the Secretary shall release the levy * * * if * * * such levy is creating an economic hardship". A plain reading of the introductory clause requires an existing levy to be released.

Similarly relief under section 6343(a)(1)(D) seems to be predicated on the levy's being the cause of the taxpayer's economic hardship.[12]

This reading is in contrast to both petitioner's position and the Commissioner's established practice of considering an individual taxpayer's economic hardship argument during the CDP hearing. Petitioner received a notice of intent to levy and timely requested a CDP hearing. Following its CDP hearing, petitioner received a notice of determination upholding the proposed levy and timely petitioned this Court to review that determination. Presently the levy at issue is merely proposed; petitioner has suffered no economic hardship as a result

---

[12]With respect to levies, Congress provided for relief in multiple procedural postures in sec. 6334 (preventing levy upon certain property), sec. 6331(d) (requiring notice before levy), sec. 6330(b) (providing for administrative hearing after notice), sec. 6330(d) (providing for judicial review of the administrative determination), and sec. 6343 (providing circumstances upon which a levy must be released and property returned). Liens, on the other hand, arise as of the moment that "any person liable to pay any tax neglects or refuses to pay the same after demand". Sec. 6321.

of the levy.[13]  Thus, if the Court applied the plain meaning of this statute, the Court could not grant petitioner's requested relief.[14]

Petitioner believes that "taxpayer" should be defined as it typically is in section 7701 and that "economic hardship" should be defined broadly to include nonindividuals.  But section 6343 does not always use "taxpayer" to include nonindividuals.  See sec. 6343(e).  Thus, a reasonable interpretation of section 6343(a)(1)(D) is that "taxpayer" could be limited to individuals given the potential reasonable interpretation of "economic hardship".  This position is buttressed by the fact that Congress gave the Secretary general authority to issue regulations with respect to the required release of levies and specific discretion in determining whether "economic hardship" existed and whether it was caused by the levy.  Sec. 6343(a)(1)(D).  This specific grant of discretionary authority does not exist in the other required-release provisions.  See sec. 6343(a)(1)(A), (B), (C), (E).

---

[13]A taxpayer's request for a CDP hearing automatically suspends the levy process "for the period during which such hearing, and appeals therein, are pending."  Sec. 6330(e)(1); sec. 301.6330-1(g)(2), Q&A-G1, Proced. & Admin. Regs. ("The suspension period continues until * * * the expiration of the time for seeking judicial review or upon exhaustion of any rights to appeals following judicial review.").

[14]Since no levy has been made, it seems as though the effective date of this provision (making sec. 6343(a) applicable to "levies issued on or after 7/1/89") might render sec. 6343(a) inapplicable to petitioner.  See supra note 5.

Because these points of inquiry exist, the Court finds that section 6343(a)(1)(D) is silent or ambiguous with respect to the meaning of "taxpayer", the relationship between "hardship" and the taxpayer's "financial condition", and whether Congress intended to require prospective relief. Accordingly, we look next to the legislative history of this provision to determine whether Congress' intent is clearly and unambiguously expressed. Ron Peterson Firearms, LLC v. Jones, 760 F.3d 1147, 1157 n.10 (10th Cir. 2014); Caltex Oil Venture v. Commissioner, 138 T.C. at 34.

b.      Legislative History

As originally enacted in the Internal Revenue Code of 1954, ch. 64, 68A Stat. at 789, section 6343 provided:

> It shall be lawful for the Secretary or his delegate, under regulations prescribed by the Secretary or his delegate, to release the levy upon all or part of the property or rights to property levied upon where the Secretary or his delegate determines that such action will facilitate the collection of the liability, but such release shall not operate to prevent any subsequent levy.

Although there were several amendments to this section between 1954 and 1988, there was no substantial alteration of the grant of discretion to the Secretary to issue regulations and determine whether to release a levy.[15] In 1988, however, the

---

[15]See Federal Tax Lien Act of 1966, Pub. L. No. 89-719, sec. 104(i), 80 Stat.

(continued...)

Taxpayer's Bill of Rights (TBOR) included a provision that changed the text of section 6343(a) from its original wording to what was in force during the year at issue in this case.[16] Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. No. 100-647, title VI, subtitle J, sec. 6236(f), 102 Stat. at 3740. The Court's analysis will accordingly be focused on Congress' intent in adding section 6343(a)(1)(D).

The first version of section 6343(a)(1)(D) was introduced in S. 2400, 98th Cong., sec. 2 (1984). The bill's purpose was "[t]o amend the Internal Revenue Code of 1954 to safeguard taxpayer's rights"; section 2(e) (Individual Provision) of the bill proposed to amend section 6343(a) to include:

---

[15](...continued)
at 1138 (adding subsec. (b)); Tax Reform Act of 1976, Pub. L. No. 94-455, sec. 1906(b)(13)(A), 90 Stat. at 1834 (making minor terminology change to subsec. (b)); Act of Dec. 29, 1979, Pub. L. No. 96-167, sec. 4(a), 93 Stat. at 1275 (adding subsec. (c)); Tax Reform Act of 1986, Pub. L. No. 99-514, sec. 1511(c)(10), 100 Stat. at 2745 (making minor terminology change to subsec. (c)).

[16]Although there were several subsequent amendments to sec. 6343, none modified subsec. (a). See Taxpayer Bill of Rights 2, Pub. L. No. 104-168, sec. 501(b), 110 Stat. at 1460 (1996) (adding subsec. (d)); Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, secs. 1102(d)(1)(B), 3432(a), 112 Stat. 704, 759 (making minor terminology change to subsec. (d) and adding subsec. (e)).

SEC. 6343(a)  Release of Levy.--

(1)  In general.--Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon if--

\*       \*       \*       \*       \*       \*       \*

(E)  the taxpayer can substantiate that the levy prevents the taxpayer from meeting necessary living expenses * * *

As drafted, this provision likely limits "taxpayer" to individuals by its use of the phrase "living expenses"--something nonindividuals cannot have.  Congress was therefore aware that the use of the term "taxpayer" could be limited by the context of the sentence.  The bill was referred to the Senate Committee on Finance (Finance Committee), and a public hearing was held at which the committee acknowledged the absence of a definition of "necessary living expenses".[17]

The 98th Congress concluded without final action on S. 2400. Subsequently S. 579 and S. 604, 100th Cong. (1987), were introduced, each proposing to improve taxpayers' rights and each containing, word for word, the

---

[17]Hearing Before the S. Comm. on Finance, 98th Cong. 845 (1984) (statement of Sen. Grassley, Chairman, S. Comm. on Finance Subcomm. on Oversight of the IRS; author, S. 2400, 98th Cong. (1984)).

Individual Provision.[18]  S. 579, 100th Cong., sec. 2 (1987); S. 604, 100th Cong., sec. 8 (1987).  Both were referred to the Finance Committee, which held three hearings.  The Commissioner of the IRS was among those who attended the hearings, and he testified on behalf of the IRS.[19]

In October of 1987 the Individual Provision reflected in S. 579 and S. 604 was included without change in the new version of TBOR, S. 1774, 100th Cong. (1987).[20]  Members of the committee met with--and invited comments from-- former Commissioners, representatives from the American Bar Association (ABA)

---

[18]For S. 604 there existed "a historically high level of support for this type of legislation"--28 Senators cosponsoring it and more than 70 members of the House of Representatives sponsoring the companion measure, H.R. 1313, 100th Cong. (1987).  Hearing Before the S. Comm. on Finance, 100th Cong. 131, Pt. 1 (1987) (statement of Sen. Reid, author, S. 579, 100th Cong. (1987)).

[19]Much of the testimony centered on the mistreatment of individual taxpayers.  See generally Hearing Before the S. Comm. on Finance, 100th Cong. 131, Pt. 1 (1987).  One of the cosponsors noted that although collection of taxes is essential to Government function, "individual taxpayers * * * have rights that must be protected.  And that is what we are here to do".  Id. (statement of Sen. Pryor, Chairman, S. Comm. on Finance Subcomm. on Private Retirement Plans and Oversight of the IRS; author, S. 604, 100th Cong. (1987)).  The Finance Subcommittee requested examples of levies against small businesses and expressed intent to "prevent some of that from happening in the future."  Id.

[20]S. 1774 ultimately garnered 71 cosponsors; its counterpart, H.R. 3470, 100th Cong. (1987), ultimately garnered 227 cosponsors.  See https://www.congress.gov/bill/100th-congress/senate-bill/1774 (last visited Jan. 26, 2017); https://www.congress.gov/bill/100th-congress/house-bill/3470 (last visited Jan. 26, 2017).

and the American Institute of Certified Public Accountants. 100 Cong. Rec. S13892 (daily ed. Oct. 8, 1987) (statement of Sen. Pryor). The result, S. 1774, provided additional protections and corrected technical problems; but the Individual Provision did not change. Id. at S13892 (statement of Sen. Pryor), S13895 (Individual Provision).

The IRS submitted further comments opposing the Individual Provision, which stated that the financial condition of a taxpayer had no bearing on the enforceability of a levy and, to avoid interpretation disputes regarding "hardship" and "necessary living expenses", suggested that the bill be amended to state: "where the Secretary otherwise determines the levy should be released".[21] Service Position on Provisions of The "Omnibus Taxpayers' Bill of Rights Act", IRS, National Archives Document of S. Comm. on Finance, 100th Cong. (1987).[22]

On December 4, 1987, the Omnibus Budget Reconciliation Act of 1987, S. 1920, 100th Cong. (1987), was introduced on behalf of the Budget Committee. Although it proposed an amendment to section 6343, it included neither the

---

[21]It is interesting that this document, dated October 14, 1987, addresses issues with the definition of "hardship" before the current provision was proposed. The Court has found no indication that the term was included before the implementation of Senator Pryor's amendments discussed below.

[22]This document is one of many preserved pursuant to 44 U.S.C. sec. 2118 (1988), which requires the preservation of congressional committee records.

Individual Provision nor the current section 6343(a)(1)(D). Id. sec. 4743(f).

However, like S. 1774, S. 1920 proposed an amendment to section 6331(e) to provide that "[t]he effect of a levy on salary or wages payable to or received by a taxpayer shall be continuous * * * until * * * the Secretary has determined that such liability is unenforceable due to the financial condition of the taxpayer." Id. sec. 4743(b) (Unenforceability Provision).[23] Like the current section 6343(e), this Unenforceability Provision seems to apply only to individual taxpayers.[24]

Both S. 1774 and S. 1920 were referred to the Finance Committee for reconciliation. The Finance Committee held a public markup hearing where Senator Pryor proposed numerous amendments seeking to ease the most controversial provisions--including those related to levy and distraint--and address most of the IRS' concerns.[25] After further debate, the Finance Committee

---

[23]This provision is nearly identical to the current sec. 6343(e).

[24]Sec. 6159(b)(3), when enacted in 1988, used the phrase "financial condition of the taxpayer". Technical and Miscellaneous Revenue Act of 1988, Pub. L. No. 100-647, sec. 6234(a), 102 Stat. at 3735. But unlike the proposed Unenforceability Provision, which seems to limit "taxpayer" to individuals, sec. 6159(b)(3) used "taxpayer" in an unrestricted manner--regarding installment agreements.

[25]Finance Committee Sends Amended Taxpayers' Bill of Rights to Senate Floor, Tax Notes, Mar. 21, 1988 (noting the fierce debate and concerns voiced regarding the negative revenue impact). One such amendment stated: "With

(continued...)

announced its approval of TBOR.  The announcement described the release of levy provisions simply:  "The provision requires the release of any levy on wages and salaries under certain circumstances."[26]  Each of Senator Pryor's amendments to the levy provisions was accepted.[27]  Senate Finance Committee Tentatively Approves Taxpayer Rights Measure, 54 B.N.A. G-5 (Mar. 21, 1988).

The reconciled bill's text with respect to the levy provisions included two relevant changes.  First, the Unenforceability Provision of section 6331(e) became:  "(e) Continuing Levy on Salary and Wages.--The effect of a levy on salary or wages payable to or received by a taxpayer shall be continuous from the date such levy is first made until such levy is released under section 6343."  S. 2223, 100th Cong., sec. 111(b)(1) (1988).  Second, section 6343(a)(1) no longer included the

---

[25](...continued)
respect to the effect of a levy on salary and wages, provide that the IRS may consider the economic hardship that may be suffered by the taxpayer and delete the condition relating to unenforceability of the liability."  Sen. David Pryor's (D-Ark.) Proposed Amendments to the Taxpayer's Bill of Rights (S 1774), National Archives Document of S. Comm. on Finance, 100th Cong. (1988).

[26]Press Release M-3, S. Comm. on Finance, Committee on Finance Approves Taxpayer Bill of Rights 3 (Mar. 18, 1988).

[27]During the public markup hearing on Mar. 18, 1988, the only amendments accepted by Committee Chairman Bentsen were those of Senator Pryor.  Finance Committee Sends Amended Taxpayers' Bill of Rights to Senate Floor, 38 Tax Notes 1315 (1988).  There were no amendments to what would become sec. 6343(a)(1)(D).

Individual Provision.  It instead stated:  "(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer".  Id. sec. 111(f).

The revised bill, S. 2223, was unanimously approved by the Finance Committee and was introduced in the Senate.  The accompanying Finance Committee report, S. Rept. No. 100-309 (1988), detailed the provisions and provided "Reasons for change".  With respect to the levy provisions, the report stated:  "The committee believes that it is appropriate to extend the time period between the date notice of intent to levy is provided to taxpayers and the date that levy can be made.  The committee also believes that it is appropriate to expand the scope of property exempt from levy."  Id. at 9-10.  No other substantive explanation was provided.

The Senate amendment to H.R. 4333 included all of the S. 2223 provisions.  The House bill did not include a similar provision.  The conference agreement followed the Senate amendment in whole in regard to levy provisions that created an economic hardship because of the taxpayer's financial condition, and the provision as reflected in the current version of section 6343(a)(1)(D) was included in TAMRA.  H.R. Conf. Rept. No. 100-1104, at 220-223 (1988), 1988-3 C.B. 473, 710-713.  The levy provisions of S. 2223 did not change.  With little explanation,

the Individual Provision was replaced with the current section 6343(a)(1)(D). And although the Individual Provision was strongly supported by Congress, the levy provisions were highly contested and debated. While one might conclude that the text was amended to appease the Commissioner's concerns regarding statutory interpretation in the absence of definitions and to include nonindividuals, one could also conclude that the original intent is carried through to the current provision despite the revision.

In any event, neither the text of the statute nor its legislative history proves clearly Congress' intent regarding the applicability of section 6343(a)(1)(D). Accordingly, for any of the reasons discussed supra, the Court finds that with respect to whether this provision provides prospective relief to a nonindividual taxpayer, section 6343 is silent or ambiguous. Since section 6343(a)(1)(D) does not clearly express Congress' intent, the Court must move to step 2 of the Chevron analysis.

2.    Chevron Step 2

When a statute is ambiguous, step 2 of Chevron, 467 U.S. at 843, requires the Court to determine whether the regulation is based on a permissible construction of the statute. Under Chevron step 2, the Court may not disturb an agency rule unless it is "arbitrary or capricious in substance, or manifestly contrary

to the statute." See Mayo Found., 562 U.S. at 53-58 (quoting Household Credit Servs., Inc. v. Pfennig, 541 U.S. 232, 242 (2004)). Petitioner echoes its earlier position, arguing that if section 6343 is ambiguous, respondent's interpretation of the statute is not a permissible one. The Court disagrees for three reasons. First, the statute might properly be interpreted in the light of its legislative history to convey the meaning assigned by either petitioner or respondent. Second, by way of analogy to similar wording in section 301.7122-1, Proced. & Admin. Regs., and its preamble, the limitation of "economic hardship" to individual taxpayers is not inconsistent with section 6343(a)(1)(D). And third, the relief provided by the regulation is greater than that provided by the statute.

a.     Wording of Section 301.6343-1(b)(4)(i)

Congress saw fit to enact section 6343(a) and to grant the Secretary discretion in prescribing the implementing regulations. And, with respect to the "economic hardship" provision, additional discretion is provided to "determine that such levy is creating an economic hardship due to the financial condition of the taxpayer."[28] Sec. 6343(a)(1)(D). Specific regulations were needed both to

---

[28]As discussed supra, the Commissioner was involved in developing the provisions of TBOR from its early stages; he testified during hearings, submitted written comments, and worked to solve internally several of the issues identified by Congress. See Finance Schedules Markup of Taxpayers' Bill of Rights, Tax

(continued...)

implement the exceptions of section 6343(a)(1) and to provide a framework of determination for purposes of subparagraph (D). Accordingly, in March 1989 drafting began. 56 Fed. Reg. 51857 (Oct. 16, 1991).

In October 1991 the Secretary issued proposed regulations providing guidance concerning the implementation of section 6343(a)(1). See 56 Fed. Reg. 51857 (Oct. 16, 1991). The proposed regulations addressed in detail the requirements of section 6343(a)(1). Id. Section 301.6343-2(b)(4), Proposed Proced. & Admin. Regs., 56 Fed. Reg. 51859 (Oct. 16. 1991), was identical to the current section 301.6343-1(b)(4), Proced. & Admin. Regs. The IRS requested public comments and scheduled a hearing. See 56 Fed. Reg. 51857.

In January 1995 the Secretary promulgated final regulations under section 6343(a). See T.D. 8587, 1995-1 C.B. 207. These regulations currently appear in substantially the same form under section 301.6343-1(b), Proced. & Admin. Regs. In the preamble, the IRS addressed numerous comments and suggestions, adopting some and explaining the rejection of others. T.D. 8587, 1995-1 C.B. at 207-209. None of the comments, however, addressed the regulation's restriction of economic hardship under section 6343(a)(1)(D) to individual taxpayers.

---

[28](...continued)
Notes (March 13, 1988) (noting "several initiatives * * * aimed at improving IRS operations and taxpayer services").

Section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., appears to follow the Court's earlier discussion as it related to providing relief and protection to taxpayers for their necessary living expenses. The pertinent portion provides:

> The director must release the levy upon all or a part of the property or rights to property levied upon if he or she determines that * * * [t]he levy is creating an economic hardship due to the financial condition of an individual taxpayer. This condition applies if satisfaction of the levy in whole or in part will cause an individual taxpayer to be unable to pay his or her reasonable basic living expenses. * * *

To determine an amount for reasonable basic living expenses, the regulations require the Secretary to "consider any information provided by the taxpayer", including: (1) the taxpayer's age, employment status and history, ability to earn, number of dependents; (2) the amount reasonably necessary for food, clothing, housing, medical expenses, transportation, and tax payments; (3) the cost of living in the geographic area in which the taxpayer resides; (4) property exempt from levy that is available to pay the taxpayer's expenses; (5) any extraordinary circumstances; and (6) any other factor that bears on economic hardship. See id. subdiv. (ii).

With respect to whether section 6343(a)(1)(D) was intended to apply to nonindividuals, the intent of Congress is not clear--the clearest indicator might be the two grants of discretion to the Secretary. Pursuant to this authority the

Secretary determined that "taxpayer" is limited under section 6343(a)(1)(D) to individuals on the basis of a narrow reading of "economic hardship". In the light of the foregoing analysis of section 6343 and its legislative history, the Court finds that the regulation follows one permissible interpretation of Congress' intended applicability of subsection (a)(1)(D).

Accordingly, insofar as the statute is silent or ambiguous, to that extent (and because of the specific grant of authority) it has left room for the Secretary to exercise his discretion in promulgating the disputed regulation, which is based on a "permissible construction of the statute". Chevron, 467 U.S. at 843. As a permissible construction, the regulation is ipso facto not manifestly contrary to the statute.

b.     History of Section 301.7122-1

Petitioner cites section 7122, arguing that "corporations are not excluded from submitting an offer-in-compromise to resolve an 'economic hardship' when that corporation cannot fully pay a tax liability." Although petitioner is correct that a corporation may submit an offer-in-compromise under section 7122, the regulations are clear that in this context, nonindividuals are not entitled to "economic hardship" relief. See sec. 301.7122-1(b)(3), Proced. & Admin. Regs. Not only does this regulation expressly apply only to individuals, but it does so

through a cross-reference to the "economic hardship" definition in section 301.6343-1(b)(4)(i), Proced. & Admin. Regs.

When originally issued, section 301.7122-1T(b)(4)(iv), Example (4), Temporary Proced. & Admin. Regs., 64 Fed. Reg. 39025 (July 21, 1999), included an economic hardship example involving a business. However, the final version excluded this example; the preamble discussed this removal in detail. T.D. 9007, 2002-2 C.B. 349. It explained that "economic hardship" applies only to individuals and that the business example was originally included in the temporary regulation in the event that a standard for "business economic hardship" could be developed. Id. However, the IRS concluded that such a standard for nonindividuals would not necessarily promote effective tax administration because it might result in the Government's determining whether and when to forgo the collection of taxes to support a nonviable business.[29] Id. Nonetheless, the preamble states that there are numerous other avenues for nonindividuals to seek relief from liability, such as doubt as to collectibility or public policy considerations. Id.

---

[29]The Court notes that legislation has been introduced on multiple occasions "[t]o provide a taxpayer bill of rights for small businesses", S. 949, 114th Cong. (2015), and to insert into sec. 6343 a set of criteria for determining business economic hardship, H.R. 4128, 114th Cong., sec. 304 (2015); H.R. 4368, 112th Cong., sec. 1 (2012). None of these bills, however, was enacted.

On the basis of section 301.7122-1(b)(4), Proced. & Admin. Regs., and the analysis provided in the preamble, the Court finds this regulation's treatment of "economic hardship" to be analogous to that in section 301.6343-1(b)(4), Proced. & Admin. Regs. Section 6343(a)(1) and section 301.6343-1(b), Proced. & Admin. Regs., provide multiple avenues for relief. And just as these are alternative avenues with respect to section 301.7122-1, Proced. & Admin. Regs., the foreclosure of nonindividuals from "economic hardship" relief does not foreclose relief for reasons found in subparagraph (B) (release of the levy would facilitate collection of the liability), (C) (the taxpayer entered into an installment agreement), or (E) (the fair market value of the property exceeds the levy and release would not hinder collection of the liability) of section 6343(a)(1).

Accordingly, the Court finds that the discretion provided to the Secretary by section 6343(a) and the existence of other avenues for nonindividuals in similar circumstances to obtain the relief intended by Congress indicate that the limiting of "economic hardship" to individuals by section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., is not inconsistent with the provisions of section 6343(a).

c.     Relief Provided by Section 301.6343-1(b)(4)(i)

Finally, the Court finds section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., reasonable because it provides prospective relief. As discussed supra pp.

23-25, section 6343 provides postlevy relief to taxpayers. And with respect to section 6343(a)(1)(D), postlevy relief is predicated upon the Secretary's determination that an existing levy is causing economic hardship.

It appears, however, that in prescribing the accompanying regulations, the Secretary deemed it appropriate to provide relief to individual taxpayers if "satisfaction of the levy in whole or in part will cause an individual taxpayer to be unable to pay his or her reasonable basic living expenses." Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs. Such prospective relief to individual taxpayers was affirmed by this Court in Vinatieri v. Commissioner, 133 T.C. 392. There, the Court acknowledged section 301.6343-1(b)(4), Proced. & Admin. Regs., stating that "[m]andatory release of levy creating an economic hardship applies only to individuals." Vinatieri v. Commissioner, 133 T.C. at 400 n.7. The Court held that section 6343(a)(1)(D) and the regulation rendered it unreasonable for a settlement officer to proceed with a levy after an individual taxpayer established that the levy would create economic hardship since section 6343(a)(1)(D) would require immediate release of the levy. Id. at 401-402.

Given Congress' intent to provide additional protection and relief to taxpayers, the Court finds reasonable the regulation's additional protection of

individual taxpayers who would suffer "economic hardship" if the levy were enforced.

Regardless of whether petitioner or respondent has the better interpretation of section 6343(a)(1)(D), the Court concludes that the Secretary's, as embodied in the challenged regulation, is a permissible one. Not only does it follow one of the two possible interpretations of congressional intent, but it also provides the relief more effectively.

C.    Conclusion

Because the Court finds that section 6343(a)(1)(D) is silent or ambiguous regarding Congress' intent to provide prospective relief to a nonindividual taxpayer and because the Court finds that the construction of this section embodied in section 301.6343-1(b)(4), Proced. & Admin. Regs., follows a permissible interpretation of congressional intent, the Court concludes that section 301.6343-1(b)(4), Proced. & Admin. Regs., is a valid regulation. Accordingly, to that extent, petitioner's motion for summary judgment will be denied in part.

This conclusion, however, does not foreclose nonindividual taxpayers from relief in circumstances where the proposed collection action, if sustained, could result in some form of economic difficulty. These economic realities and consequences of the Commissioner's proposed collection action are properly

considered for all taxpayers as part of the intrusiveness analysis within the section 6330(c)(3)(C) balancing test--namely whether the intrusiveness caused by sustaining the proposed collection action outweighs the Government's need for the efficient collection of taxes. Cf. Pazzo Pazzo, Inc. v. Commissioner, T.C. Memo. 2017-12, at *28-*29 (noting that relief for "economic hardship" under section 301.7122-1(b), Proced. & Admin. Regs., is unavailable to nonindividuals and evaluating the corporate taxpayer's argument under the SO's consideration of its specific facts and circumstances in the balancing test under section 6330(c)(3)(C)).

The remainder of the case--including the Court's analysis of the section 6330(c)(3) consideration requirements--and the balance of petitioner's motion for summary judgment will be resolved in T.C. Memo. 2017-50, also filed this date.

To reflect the foregoing,

An appropriate order

will be issued.