T.C. Memo. 2017-98

UNITED STATES TAX COURT

WESTERN HILLS RESIDENTIAL CARE, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 28124-14L.                          Filed May 31, 2017.

<u>David J. Looby</u>, for petitioner.

<u>Ann Louise Darnold</u>, for respondent.

MEMORANDUM OPINION

PARIS, <u>Judge</u>:  In this collection due process (CDP) case, petitioner seeks

review pursuant to section 6330(d)(1)[1] of the determination by the Internal

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code of 1986, as amended and in effect at all relevant times, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

[*2] Revenue Service (IRS or respondent) to uphold a notice of intent to levy. Petitioner filed a motion for summary judgment under Rule 121, and respondent filed a subsequent motion for summary judgment under Rule 121. The questions for decision are: (1) whether IRS Settlement Officer Alcorte (SO Alcorte) abused her discretion in rejecting petitioner's proposed installment agreement and sustaining the proposed collection action; (2) whether she abused her discretion in denying petitioner's request to have its account put on currently-not-collectible (CNC) status; and (3) whether she had any prior involvement with respect to the unpaid tax. For the reasons explained below, the Court will grant respondent's motion for summary judgment and deny petitioner's.

## Background

The following facts are based on the parties' pleadings and motion papers, including the attached exhibits and affidavits.[2] See Rule 121(b). Petitioner operates a nursing home facility in a rural community of fewer than 3,000 residents. Its principal place of business was in Oklahoma at the time the petition was filed.

---

[2]Each party requests that certain of the other's affidavits and exhibits be stricken from the record because they were not part of the original administrative record. Although conflicting authority exists as to whether the Court's review in CDP cases is limited to the administrative record, neither the U.S. Court of Appeals for the Tenth Circuit nor the U.S. Court of Appeals for the D.C. Circuit has specifically ruled on the issue. The Court denies both requests.

[*3] The case at issue relates to petitioner's outstanding tax liability from Form 941, Employer's Quarterly Federal Tax Return, for the period ending December 31, 2013. For that period, petitioner timely filed its Form 941 but failed to pay the reported tax liability of $12,317.36 for that quarter. On March 31, 2014, respondent assessed the tax reported on the return and began collection efforts.

On April 24, 2014, respondent issued to petitioner a Letter 1058, Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing. In response petitioner timely submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing, seeking to enter into a $6,000-per-month installment agreement for its unpaid employment tax liability. The CDP hearing request stated that if respondent were permitted to levy, petitioner's difficulty with private pay collections would render it unable to pay either the employment tax balance it owed or its current taxes. Petitioner's CDP hearing request, however, did not dispute the underlying employment tax liability; petitioner checked the collection alternative boxes for "Installment Agreement" and "I Cannot Pay Balance".

Respondent mailed petitioner a letter dated June 6, 2014, acknowledging receipt of petitioner's CDP hearing request, and SO Alcorte subsequently mailed petitioner a letter scheduling a CDP hearing for August 28, 2014. SO Alcorte's

[*4] letter advised petitioner that it did not qualify for consideration of an installment agreement because it was not in compliance with its employment tax deposit requirements for the taxable period ending June 30, 2014. The letter further advised petitioner that to qualify for a collection alternative it had to provide to SO Alcorte the following items no later than August 11, 2014: (1) a completed Form 433-B, Collection Information Statement for Businesses, and (2) evidence that it had made the required Federal employment tax deposits for the current taxable period. SO Alcorte informed petitioner that respondent could not consider collection alternatives without the information requested.

Petitioner did not submit the requested Form 433-B until August 27, 2014, one day before the scheduled hearing, asserting that the proposed levy would result in "economic hardship" and, therefore, "this situation * * * mandate[s] the release of the proposed levy". The Form 433-B was neither signed nor certified by a corporate officer. The Form 433-B listed petitioner's monthly income of $18,455 and monthly expenses of $25,599.94, reflecting a net negative monthly income. It listed no balance for petitioner's bank account and accounts receivable, no outstanding liabilities,[3] and no real property.[4]

---

[3]Contained in the record are two of petitioner's accounting spreadsheets-- one from December 2013, the other from June 2014. The 2013 spreadsheet shows

(continued...)

[*5]   In preparation for the CDP hearing SO Alcorte reviewed the administrative record and noted in her case activity report that petitioner did not appear to qualify for an installment agreement.  She also noted that petitioner offered no explanation regarding how it would make its proposed monthly installment agreement payments of $6,000 while its net revenue was negative and that there was no equity in assets.

On August 28, 2014, the parties held a CDP hearing.  Petitioner's representative did not contest petitioner's underlying tax liability but instead reiterated that it would suffer economic hardship if the proposed collection action were sustained.  And he requested that petitioner's account be placed in CNC status.

SO Alcorte explained to petitioner's representative that she would not consider petitioner's economic hardship argument because the economic hardship

_____

[3](...continued)
interest expense of $3,046.79 for December and an annual total of $14,190.52. The 2014 spreadsheet shows interest expense of $4,976.19 through the end of June.  Petitioner offers no explanation for this discrepancy.

[4]The 2013 spreadsheet shows a property tax payment but no rent for the entire year; the 2014 spreadsheet shows a building rent payment in June of $4,179.52 but to date, only $4,359.52 in total rent payments.  The 2014 spreadsheet does not show any property tax payments.  Petitioner offers no explanation for this discrepancy either.

[*6] exception is not available to corporations. She noted that because (1) petitioner was not in compliance with its Federal employment tax deposit obligations and (2) the economic hardship exception is not applicable to corporations, she would be sustaining the proposed collection action and closing the case. She did, however, agree to file an Appeals Referral Investigation (ARI) request to investigate whether petitioner could qualify for CNC status.

On October 30, 2014, having received no response regarding the ARI, SO Alcorte followed up with her request. The ARI had, in fact, been evaluated, and her group manager spoke with petitioner's representative directly. During that conversation the manager explained that petitioner did not qualify for CNC status because, notwithstanding the outstanding employment tax liability, petitioner had not shown it could continue to remit its current Federal employment tax amounts and remain in business. In response, petitioner's representative indicated that petitioner would pay the outstanding amount in full.[5]

SO Alcorte verified that the assessment was properly made and that all other requirements of applicable law and administrative procedure had been met. She thereupon closed the case and, on November 13, 2014, issued to petitioner a notice

---

[5]Petitioner does dispute this fact in its response to respondent's motion for summary judgment.

**[*7]** of determination sustaining the notice of intent to levy with respect to the Form 941 tax period ending December 31, 2013.

Petitioner timely petitioned this Court with respect to the notice of determination and filed a motion for summary judgment. Respondent also filed a motion for summary judgment.

## Discussion

I.      Summary Judgment and Standard of Review

The purpose of summary judgment is to expedite litigation and avoid unnecessary and time-consuming trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). If a moving party properly makes and supports a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of such party's pleading" but must set forth specific facts, by affidavit or otherwise, showing that there is a genuine dispute for trial. Rule 121(d).

[*8]  Upon due consideration of the parties' motions, supporting declarations, and responses thereto, the Court concludes that no material facts are in dispute and that judgment may be rendered for respondent as a matter of law.

Where the validity of the underlying tax liability is properly at issue in a collection case, the Court will review the matter on a de novo basis.  Sego v. Commissioner, 114 T.C. 604, 610 (2000).  Where, as here, there is no dispute concerning the underlying tax liability, the Court reviews the Commissioner's administrative determination to proceed with collection for abuse of discretion.[6] Id.  Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law.  See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

II.    Collection Due Process

In deciding whether the SO abused her discretion in sustaining the proposed collection action, the Court considers whether she:  (1) properly verified that the requirements of any applicable law or administrative procedure have been met;

---

[6]Regardless of whether petitioner could have contested its underlying liability at the CDP hearing, this Court may consider a challenge to such a liability only if the taxpayer properly raised it before the SO, Giamelli v. Commissioner, 129 T.C. 107, 115 (2007), and again in its petition to this Court, see Rule 331(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded.").  Petitioner did not raise this issue neither with SO Alcorte or in its petition.  The Court accordingly deems it conceded.

**[*9]** (2) considered any relevant issues petitioner raised; and (3) determined whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary." See sec. 6330(c)(3).

Review of the record reveals that SO Alcorte conducted a thorough review of petitioner's account, determined that the taxes had been properly assessed, and verified that other requirements of applicable law and administrative procedure were followed.

Petitioner's primary contention is that section 301.6343-1(b)(4)(i), Proced. & Admin. Regs. (defining economic hardship only with respect to individual taxpayers), is invalid and that SO Alcorte abused her discretion in failing to consider its request for relief under the economic hardship provision of section 6343(a)(1)(D). This contention is incorrect. This Court recently released its Opinion in Lindsay Manor Nursing Home, Inc. v. Commissioner (Lindsay Manor I), 148 T.C. __ (Mar. 23, 2017), finding that section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., is valid and that the economic hardship relief provided by section 6343(a)(1)(D) is available only to individual taxpayers. And in a companion Memorandum Opinion, Lindsay Manor Nursing Home, Inc. v. Commissioner, T.C. Memo. 2017-50, the Court concluded that the SO did not abuse her discretion

**[\*10]** in failing to consider a request for economic hardship relief made by a corporate taxpayer. SO Alcorte did not abuse her discretion in declining this request either.

Petitioner argues alternatively that SO Alcorte abused her discretion in rejecting its installment agreement request, in denying its request for its account to be placed in CNC status, and in failing to adequately consider its "economic hardship" in the balancing analysis required by section 6330(c)(3).[7] Finally, petitioner suggests that SO Alcorte was not impartial as required by section 6330(b)(3).

A.     Petitioner's Installment Agreement Request

In its discretion, the IRS may enter into an installment agreement if it determines that doing so will facilitate full or partial collection of a tax liability. See sec. 6159(a). The IRS also has discretion to reject a proposed installment agreement (subject to certain restrictions not applicable here). See Thompson v. Commissioner, 140 T.C. 173, 179 (2013); sec. 301.6159-1(a), (c)(1)(i), Proced. &

---

[7]In Lindsay Manor I, this Court found that sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs., is valid; accordingly, the economic hardship exception is available only to individuals. To the extent that petitioner's other arguments attempt to rehash this issue, they are summarily disregarded. The Court will, however, address petitioner's economic position with respect to SO Alcorte's sec. 6330(c)(3)(C) balancing analysis.

[*11] Admin. Regs.  Consequently, in reviewing this determination, the Court does not substitute its judgment for that of Appeals and decide whether in its opinion petitioner's installment agreement should have been accepted.  See Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Keller v. Commissioner, T.C. Memo. 2006-166, aff'd in part, 568 F.3d 710 (9th Cir. 2009).  Instead, the Court reviews this determination for abuse of discretion.

Petitioner argues that it was an abuse of discretion for SO Alcorte to reject its proposed installment agreement.  The record, however, demonstrates that SO Alcorte's rejection of petitioner's installment agreement was proper because petitioner was not in compliance with its Federal employment tax deposit obligations and because petitioner's income and expenses listed on its Form 433-B did not reflect an ability of petitioner to pay the proposed installment payments of $6,000 per month.[8]

### 1. Compliance With Federal Tax Obligations

In rejecting petitioner's proposed installment agreement, SO Alcorte noted that petitioner was not in compliance with its current Federal employment tax

---

[8]The Court finds disingenuous petitioner's argument that SO Alcorte's notes in her case activity report constituted a predetermination.  The notes indicate SO Alcorte's preparation for petitioner's CDP hearing and reflect a thorough review of the late-submitted Form 433-B and its attachments.  This is not an abuse of discretion.

[*12] deposit obligations. Established IRS policy requires taxpayers to be in compliance with current filing and estimated tax payment requirements to be eligible for collection alternatives. See Reed v. Commissioner, 141 T.C. 248, 256-257 (2013). Generally, current compliance with tax laws is a prerequisite to being eligible for collection alternatives. See Cox v. Commissioner, 126 T.C. 237, 257 (2006), rev'd on other grounds, 514 F.3d 1119 (10th Cir. 2008). And despite petitioner's contention, SO Alcorte was well within her discretion to require compliance with current tax obligations. See Giamelli v. Commissioner, 129 T.C. 107, 111-112 (2007); cf. Christopher Cross, Inc. v. United States, 461 F.3d 610, 613 (5th Cir. 2006) (finding no abuse of discretion when settlement officer rejected collection alternative because taxpayer was not in compliance with its tax payment obligations); Reed v. Commissioner, 141 T.C. at 257 (same).

Petitioner argues that SO Alcorte abused her discretion because--even though petitioner was not in compliance--she failed to consider that petitioner's inability to remain current with its Federal tax deposits was a result of "industry conditions beyond its control". To support its argument, petitioner cites Alessio Azzari, Inc. v. Commissioner, 136 T.C. 178 (2011).

In Alessio Azzari, Inc., a lender stopped lending money to the taxpayer after the Commissioner's settlement officer erroneously determined that the

[*13] Commissioner did not need to subordinate his lien on the taxpayer's accounts to the lender's lien on the same accounts. Id. at 181-183. As a result, the taxpayer was unable to stay current with its employment tax deposits after being in compliance for six consecutive quarters. Id. at 183. The Commissioner denied the taxpayer's installment agreement request because the taxpayer was no longer in compliance. Id. at 183-184. The Court held that it was an abuse of discretion for the Commissioner to deny the taxpayer's request for an installment agreement on the basis of the taxpayer's failure to stay current on its tax deposits because the settlement officer's erroneous interpretation of law led to the lender's decision to stop lending money to the taxpayer, which led to the taxpayer's not being in compliance. Id. at 194.

Unlike the taxpayer in Alessio Azzari, Inc., petitioner was indisputably not in compliance when it requested an installment agreement. And because section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., is valid, SO Alcorte's interpretation was not erroneous. See Lindsay Manor I. Accordingly, SO Alcorte did not abuse her discretion in rejecting petitioner's installment agreement request on the grounds that petitioner was not in compliance.

**[*14]**    2.    Ability To Make Proposed Installment Payments

SO Alcorte also analyzed and relied on petitioner's submitted Form 433-B, which she determined did not reflect petitioner's ability to make the proposed installment payments of $6,000 per month. Internal Revenue Manual (IRM) pt. 5.14.1.4(4) (June 1, 2010) states: "Installment agreements must reflect taxpayers' ability to pay on a monthly basis throughout the duration of the agreements." A taxpayer's ability to pay is determined by comparing his monthly income to allowable expenses. Friedman v. Commissioner, T.C. Memo. 2013-44, at *9. Therefore, a SO may accept, at minimum, a monthly payment equal to the excess of a taxpayer's monthly income over the taxpayer's allowable expenses. Boulware v. Commissioner, T.C. Memo. 2014-80, at *29, aff'd, 816 F.3d 133 (D.C. Cir. 2016). But it is not an abuse of discretion for a SO to reject a proposed installment agreement when a taxpayer's monthly income does not support the proposed payment. Id.; Lipson v. Commissioner, T.C. Memo. 2012-252 (finding no abuse of discretion when the taxpayer's Form 433 could not support the proposed installment agreement payments).

SO Alcorte assumed that the financial information petitioner provided was correct. That information reflected net negative monthly income of over $7,000 and zero assets. And petitioner did not explain how it would afford monthly

[*15] installment payments of $6,000. Even if this had been her only reason for rejecting petitioner's proposed installment agreement, SO Alcorte did not abuse her discretion.

B.    Petitioner's Request for CNC Status

Petitioner next challenges SO Alcorte's denial of its request for its account to be placed in CNC status. IRM pt. 5.16.1.2.7 (Aug. 25, 2014), provides the parameters to give CNC status to corporations that remain in business and are unable to pay both the back taxes and the current taxes. This is exactly the situation petitioner asserted to SO Alcorte in its CDP hearing request. Petitioner reiterated its request during the CDP hearing, and SO Alcorte sought managerial approval as she was required to. See IRM pt 5.16.1.5(1) (Aug. 25, 2014) ("The decision to place an account in CNC status requires the approval of a manager.").

SO Alcorte's group manager (GM) participated in evaluating petitioner's request for CNC status, speaking with petitioner's representative directly. During their conversation the GM explained that petitioner would not be entitled to CNC status because it was not, in fact, current with its tax liabilities, and the financial information it submitted did not support its assertion that it could remain current if allowed CNC status. In response, petitioner's representative indicated that since CNC was not viable, petitioner would pay the outstanding amount in full. And

[*16] after the GM communicated the decision and reasoning to SO Alcorte, she called petitioner's representative, informing him that she would be adopting the recommendation that CNC status not be provided.

Petitioner argues that SO Alcorte was required to conduct her own evaluation of its request and that she could not adopt her GM's reasoning. This argument is not supported by the IRM provision requiring the opposite--that an SO obtain approval of the decision regarding CNC status. Petitioner also argues that SO Alcorte should have taken its economic hardship argument into account. As discussed in Lindsay Manor I, the economic hardship exception of section 6343 is not available to corporations such as petitioner. And in any event, the CNC hardship provision of the IRM specifically excludes corporations.[9] See IRM pt. 5.16.1.2.9 (Aug. 25, 2014). SO Alcorte did not abuse her discretion in adopting the recommendation that petitioner not be provided CNC status. But to the extent that petitioner's arguments can be construed to contest SO Alcorte's balancing analysis under section 6330(c)(3)(C), the Court will evaluate them.

_____

[9]"[T]he government is not required to continue subsidizing failing businesses by foregoing tax collection. Any other conclusion would create a bizarre tax system with perverse incentives for businesses to maintain themselves on the edge of insolvency in order to enjoy immunity from tax enforcement." Living Care Alts. of Utica, Inc. v. United States, 411 F.3d 621, 628 (6th Cir. 2005).

[*17]  C.     SO Alcorte's Balancing Analysis

Petitioner next argues that SO Alcorte either did not conduct the required statutory balancing test or did not explain her reason for concluding that its requirements were met.  Petitioner suggests that it "proposed a viable collection alternative that was less intrusive than enforced levy action" but then goes on to argue that the financial documentation it submitted on Form 433-B demonstrated that its expenses exceeded its income, it had no assets, and the business was insolvent and had no ability to pay.

This Court also found in Lindsay Manor I that the section 6330(c)(3)(C) balancing test properly takes into account a taxpayer's specific economic realities and the consequences of a proposed collection action.  On the basis of the Court's thorough analysis of the record in this case, the Court concludes that there is no material issue of fact regarding whether SO Alcorte properly balanced "the need for the efficient collection of taxes" with the legitimate concern of petitioner that "any collection action be no more intrusive than necessary."  See sec. 6330(c)(3).

At the time petitioner requested this installment agreement, it argued that a levy would render it unable to meet its payroll and patient obligations.  Petitioner's own Form 433-B showed that its monthly expenses exceeded its monthly income.  Although there was an ongoing dialogue between petitioner's

**[\*18]** counsel and SO Alcorte, petitioner gave no indication of how it would make the proposed installment payments with negative monthly revenue and zero assets.[10]

Although petitioner complains of the possibility of being forced to close its doors to its patients[11] and terminate its employees, this Court finds that SO Alcorte gave due weight to petitioner's specific circumstances. The Government's interest in efficiently collecting the amounts petitioner owed simply tipped the scale the other way.

Furthermore, it is well established that rejecting a collection alternative because of noncompliance with estimated tax payment requirements does not violate the proper balancing requirement. See, e.g., Orum v. Commissioner, 123 T.C. 1 (2004), aff'd, 412 F.3d 819 (7th Cir. 2005); Friedman v. Commissioner, T.C. Memo. 2015-196; Schwartz v. Commissioner, T.C. Memo. 2007-155. In preparation for the CDP hearing SO Alcorte discovered that petitioner was not in

---

[10]The Court notes the inconsistency in petitioner's position. Petitioner listed on its Form 433-B zero assets and zero liabilities. But on its self-prepared accounting spreadsheets, petitioner reported it had made a property tax payment during 2013 and interest expense payments during both 2013 and 2014.

[11]The affidavit of Sam Jewell included with the petitioner's motion for summary judgment stated that petitioner is licensed for 28 beds but has only 3 beds occupied and does not receive any Federal or State funding. Petitioner's income was derived solely from private pay residents.

[*19] compliance with its current employment tax deposit obligations for the taxable period ending June 30, 2014, and that petitioner did not provide proof of making the required September 30, 2014, deposit. Upon consideration of petitioner's financial position and its failure to remain in compliance with its employment tax requirements, SO Alcorte determined that there was no alternative to sustaining the notice of intent to levy; she explained the reasoning behind her decision in the notice of determination. Accordingly, the undisputed material facts establish that SO Alcorte did not abuse her discretion in conducting the section 6330(c)(3)(C) balancing test.

C.    SO Alcorte's Impartiality

Next, petitioner argues that SO Alcorte's review of the documents petitioner provided before the CDP hearing violates petitioner's section 6330(b)(3) right to a CDP hearing by an Appeals officer who had no prior involvement with respect to the unpaid tax.

Section 6330(b)(3) requires a CDP hearing to be "conducted by an officer or employee who has had no prior involvement with respect to the unpaid tax * * * before the first hearing". Prior involvement exists only when (1) the taxpayer, the tax, and the tax period at issue in the CDP hearing also were at issue in the prior non-CDP matter and (2) the Appeals officer or employee actually participated

[*20] in the prior matter. Sec. 301.6330-1(d)(2), Q&A-D4, Proced. & Admin. Regs.

Petitioner does not argue that SO Alcorte had prior involvement in an earlier, non-CDP matter; rather, petitioner argues that, by reviewing petitioner's documents before the CDP hearing, SO Alcorte was not impartial. Petitioner is incorrect. The regulations clearly state that prior involvement means that an Appeals officer actually participated in an earlier, non-CDP matter. Id. Because petitioner does not assert that SO Alcorte participated in a prior non-CDP matter, petitioner's argument must fail.

SO Alcorte verified that she had not had any prior involvement with respect to the specific tax periods at issue. Because SO Alcorte did not participate in a prior non-CDP matter concerning the same tax, taxpayer, and tax period at issue, she was an eligible Appeals officer to preside over the CDP hearing. Accordingly, the undisputed material facts establish that SO Alcorte did not abuse her discretion by reviewing the information petitioner had provided before its CDP hearing.

III.    Conclusion

Finally, petitioner argues that the Court should remand this case for additional consideration. The Court is not convinced that a remand is necessary or would be productive. See Lunsford v. Commissioner, 117 T.C. 183, 189 (2001);

[*21] <u>Kakeh v. Commissioner</u>, T.C. Memo. 2015-103, at *13.  The purpose of a remand is not to afford a "do over" for a taxpayer whose missteps during the CDP process resulted in its collection alternative's being rejected.  <u>See</u> <u>Kakeh v. Commissioner</u>, at *13.  It appears to the Court that petitioner is seeking a "do over" here.

Finding no abuse of discretion in any respect, the Court will grant respondent's motion for summary judgment and deny petitioner's.  The Court has considered all of the arguments made by the parties, and to the extent they are not addressed herein, they are considered unnecessary, moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered</u>.