T.C. Memo. 2017-102

UNITED STATES TAX COURT

SEMINOLE NURSING HOME, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24577-14L.                    Filed June 5, 2017.

<u>David J. Looby</u>, for petitioner.

<u>Ann Louise Darnold</u>, for respondent.

MEMORANDUM OPINION

PARIS, <u>Judge</u>:  In this collection due process (CDP) case, petitioner seeks

review pursuant to section 6330(d)(1)[1] of the determination by the Internal

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code of 1986, as amended and in effect at all relevant times, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

**[*2]** Revenue Service (IRS or respondent) to uphold a notice of intent to levy as set forth in a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination), dated September 17, 2014, for petitioner's taxable period ending December 31, 2013.

Petitioner and respondent have each filed a motion for summary judgment under Rule 121. The issue for decision is whether IRS Settlement Officer Alcorte (SO Alcorte) abused her discretion in rejecting petitioner's proposed installment agreement and sustaining the proposed collection action. For the reasons explained <u>infra</u>, the Court will deny petitioner's motion for summary judgment, grant in part respondent's motion for summary judgment, and remand the remainder of this case to the IRS Appeals Office for the limited purpose of reconsidering the balancing test under section 6330(c)(3)(C).

<u>Background</u>

The following facts are based on the parties' pleadings and motion papers, including the attached exhibits and affidavits.[2] <u>See</u> Rule 121(b). Petitioner

---

[2]Each party requests that certain of the other's affidavits and exhibits be stricken from the record because they were not part of the original administrative record. Although there exists conflicting authority as to whether the Court's review in CDP cases is limited to the administrative record, neither the U.S. Court of Appeals for the Tenth Circuit nor the U.S. Court of Appeals for the D.C. Circuit has specifically ruled on the issue. The Court denies both requests.

[*3] operates a nursing home facility in a rural community of fewer than 8,000 residents. Its principal place of business was in Oklahoma at the time the petition was filed.

The case at issue relates to petitioner's outstanding tax liability from Form 941, Employer's Quarterly Federal Tax Return, for the period ending December 31, 2013. For that period, petitioner timely filed its Form 941 but failed to pay its reported tax liability of $61,916.19 for that quarter. On April 14, 2014, respondent assessed the tax reported and began collection efforts.

On April 24, 2014, respondent issued to petitioner a Letter 1058, Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing. In response petitioner timely submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing (CDP hearing request), seeking to enter into a $6,000-per-month installment agreement for its unpaid employment tax liability. The CDP hearing request stated that if respondent were permitted to levy, petitioner's difficulty with Medicare and Medicaid collections would render it unable to pay either its employment tax balance or its current taxes. Petitioner's CDP hearing request, however, did not dispute the underlying employment tax liability; petitioner checked the collection alternative boxes for "Installment Agreement" and "I Cannot Pay Balance".

**[*4]**  Respondent mailed petitioner a letter dated June 6, 2014, acknowledging receipt of petitioner's CDP hearing request, and SO Alcorte subsequently mailed petitioner a letter scheduling a CDP hearing for August 26, 2014.  SO Alcorte's letter advised petitioner that it did not qualify for consideration of an installment agreement because it was not in compliance with its employment tax deposit requirements for the taxable period ending June 30, 2014.  The letter further advised petitioner that to qualify for a collection alternative it had to provide to SO Alcorte the following items no later than August 12, 2014:  (1) a completed Form 433-B, Collection Information Statement for Businesses, and (2) evidence that it had made the required Federal employment tax deposits for the current taxable period.  SO Alcorte informed petitioner that respondent could not consider collection alternatives without the information requested.

Petitioner did not submit the requested Form 433-B until August 25, 2014, one day before the scheduled CDP hearing, asserting that the proposed levy would result in "economic hardship" and, therefore, "this situation * * * mandate[s] the release of the proposed levy".  The Form 433-B was signed by petitioner's president, Sam Jewell, and listed among petitioner's assets accounts receivable from Private Pay, Medicaid Oklahoma, Medicare, and Insurance CoPay--with a combined balance of $313,112.98 for the period April 30 through June 30,

[*5] 2014.[3] The Form 433-B also listed petitioner's monthly income of $202,807.01 and monthly expenses of $188,152.24. However, SO Alcorte's notes indicated that petitioner's monthly expenses were $288,152, resulting in a net negative monthly income. This appears to be her mathematical error in reading the numbers on the Form 433-B. The actual monthly expenses total $188,152.24, for a net monthly income of $14,654.77.

In preparation for the CDP hearing SO Alcorte noted in her case activity report that petitioner did not appear to qualify for an installment agreement because its assets were sufficient to pay the outstanding liability in full. She also noted that petitioner offered no explanation regarding how it would make its proposed monthly installment agreement payments of $6,000 while she mistakenly believed its net monthly income was negative.

On August 6, 2014, the parties held the scheduled CDP hearing. Petitioner's representative did not contest petitioner's underlying tax liability but instead reiterated that it would suffer economic hardship if the proposed collection action were sustained. SO Alcorte explained that she would not consider petitioner's economic hardship argument because the economic hardship

---

[3]The record reflects that $273,252.38 of petitioner's total accounts receivable was owed by the Federal and State Government agencies referenced above.

[*6] exception under section 6343(a)(1)(D) is not available to corporations. She noted that because (1) petitioner's accounts receivable were sufficient to pay its outstanding liability in full, (2) petitioner was not in compliance with its Federal employment tax deposit obligations, and (3) the economic hardship exception was unavailable to corporations, she would be sustaining the proposed collection action and closing the case.

SO Alcorte verified that the assessment was properly made and that all other requirements of applicable law and administrative procedure had been met. She thereupon closed the case and, on September 17, 2014, issued to petitioner a notice of determination sustaining the notice of intent to levy with respect to the Form 941 tax period ending December 31, 2013.

## Discussion

I. Summary Judgment and Standard of Review

The purpose of summary judgment is to expedite litigation and avoid unnecessary and time-consuming trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). If a moving party properly makes and supports

**[\*7]** a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of such party's pleading" but must set forth specific facts, by affidavit or otherwise, showing that there is a genuine dispute for trial. Rule 121(d).

Upon due consideration of the parties' motions, supporting declarations, and responses thereto, the Court concludes that there are no material facts in dispute and that judgment may be rendered as a matter of law.

Where the validity of the underlying tax liability is properly at issue in a collection case, the Court will review the matter on a de novo basis. Sego v. Commissioner, 114 T.C. 604, 610 (2000). Where, as here, there is no dispute concerning the underlying tax liability, the Court reviews the Commissioner's administrative determination to proceed with collection for abuse of discretion.[4] Id. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

---

[4]Regardless of whether petitioner could have contested its underlying liability at the CDP hearing, this Court may consider a challenge to such a liability only if the taxpayer properly raised it before the SO, Giamelli v. Commissioner, 129 T.C. 107, 115 (2007), and again in its petition to this Court, see Rule 331(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded."). Petitioner did not raise this issue with SO Alcorte or in its petition. The Court accordingly deems it conceded.

[*8] II.     Collection Due Process

In deciding whether the SO abused her discretion in sustaining the proposed collection action, the Court considers whether she:  (1) properly verified that the requirements of any applicable law or administrative procedure have been met; (2) considered any relevant issues petitioner raised; and (3) determined whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary."  See sec. 6330(c)(3).

Review of the record reveals that SO Alcorte conducted a review of petitioner's account, determined that the taxes had been properly assessed, and verified that other requirements of applicable law and administrative procedure were followed.

Petitioner's primary contention is that section 301.6343-1(b)(4)(i), Proced. & Admin. Regs. (defining economic hardship only with respect to individual taxpayers), is invalid and that SO Alcorte abused her discretion in failing to consider its request for relief under the economic hardship provision of section 6343(a)(1)(D).  This contention is incorrect.  This Court recently released its Opinion in Lindsay Manor Nursing Home, Inc. v. Commissioner (Lindsay Manor I), 148 T.C. __ (Mar. 23, 2017), finding that section 301.6343-1(b)(4)(i), Proced.

**[*9]** & Admin. Regs., is valid and that the economic hardship relief provided by section 6343(a)(1)(D) is available only to individual taxpayers. And in a companion Memorandum Opinion, <u>Lindsay Manor Nursing Home, Inc. v. Commissioner</u>, T.C. Memo. 2017-50, the Court concluded that the SO did not abuse her discretion in failing to consider a request for economic hardship relief made by a corporate taxpayer. SO Alcorte did not abuse her discretion in declining this request either.

Petitioner argues alternatively that SO Alcorte abused her discretion in rejecting its installment agreement request and in failing to adequately consider its "economic hardship" in the balancing analysis required by section 6330(c)(3).[5] Finally, petitioner suggests that SO Alcorte was not impartial as required by section 6330(b)(3).

A.    <u>Petitioner's Installment Agreement Request</u>

In its discretion, the IRS may enter into an installment agreement if it determines that doing so will facilitate full or partial collection of a tax liability.

---

[5]In <u>Lindsay Manor I</u>, this Court found that sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs., is valid; accordingly, the economic hardship exception is available only to individuals. To the extent that petitioner's other arguments attempt to rehash this issue, they are summarily disregarded. The Court will, however, address petitioner's economic position with respect to SO Alcorte's sec. 6330(c)(3)(C) balancing analysis.

[*10] <u>See</u> sec. 6159(a).  The IRS also has discretion to reject a proposed

installment agreement (subject to certain restrictions not applicable here).  <u>See</u>

<u>Thompson v. Commissioner</u>, 140 T.C. 173, 179 (2013); sec. 301.6159-1(a),

(c)(1)(i), Proced. & Admin. Regs.  Consequently, in reviewing this determination,

the Court does not substitute its judgment for that of Appeals and decide whether

in its opinion petitioner's installment agreement should have been accepted.  <u>See</u>

<u>Woodral v. Commissioner</u>, 112 T.C. 19, 23 (1999); <u>Keller v. Commissioner</u>, T.C.

Memo. 2006-166, <u>aff'd in part</u>, 568 F.3d 710 (9th Cir. 2009).  Instead, the Court

reviews this determination for abuse of discretion.

Petitioner argues that it was an abuse of discretion for SO Alcorte to reject

its proposed installment agreement.  Although the record demonstrates that SO

Alcorte's rejection of petitioner's installment agreement was proper for either of

her two reasons--(1) the value of petitioner's assets exceeded the underlying

liability and (2) petitioner was not in compliance with its Federal employment tax

deposit obligations[6]--her review of the Form 433-B reflects a substantial

---

[6]The Court finds disingenuous petitioner's argument that SO Alcorte's notes in her case activity report constituted a predetermination.  The notes indicate SO Alcorte's preparation for petitioner's CDP hearing and reflect a thorough review of the late-submitted Form 433-B and its attachments.  This is not an abuse of discretion.

**[*11]** mathematical error indicating monthly expenses of $288,152.24 versus the listed amounts which actually total $188,152.24.

### 1. Petitioner's Assets

SO Alcorte rejected petitioner's proposed installment agreement after determining that it could fully or partially satisfy its tax liability--$61,916.19--by liquidating or borrowing against its assets--$313,112.98 in accounts receivable alone. See Internal Revenue Manual (IRM) pt. 5.14.1.4(5) and (6) (June 1, 2010) ("Taxpayers do not qualify for installment agreements if balance due accounts can be fully or partially satisfied by liquidating assets[.]"); see also Boulware v. Commissioner, T.C. Memo. 2014-80 (finding that the SO's reliance on this IRM provision was not an abuse of discretion), aff'd, 816 F.3d 133 (D.C. Cir. 2016).

And other than its argument for economic hardship relief, petitioner does not suggest that any exception to the general rule applies. The record does not reflect an abuse of discretion by SO Alcorte in rejecting this offer.

### 2. Compliance With Federal Tax Obligations

In rejecting petitioner's proposed installment agreement, SO Alcorte also noted that petitioner was not in compliance with its current Federal employment tax deposit obligations. Established IRS policy requires taxpayers to be in compliance with current filing and estimated tax payment requirements to be

[*12] eligible for collection alternatives. See Reed v. Commissioner, 141 T.C. 248, 256-257 (2013). Generally, current compliance with tax laws is a prerequisite to being eligible for collection alternatives. See Cox v. Commissioner, 126 T.C. 237, 257 (2006), rev'd on other grounds, 514 F.3d 1119 (10th Cir. 2008). And despite petitioner's contention, SO Alcorte was well within her discretion to require compliance with current tax obligations. See Giamelli v. Commissioner, 129 T.C. 107, 111-112 (2007); cf. Christopher Cross, Inc. v. United States, 461 F.3d 610, 613 (5th Cir. 2006) (finding no abuse of discretion when settlement officer rejected collection alternative because taxpayer was not in compliance with its tax payment obligations); Reed v. Commissioner, 141 T.C. at 257 (same).

Petitioner argues that SO Alcorte abused her discretion because--even though it was not in compliance--she failed to consider that its inability to remain current with its Federal tax deposits was a result of its nonreceipt of Medicare and Medicaid funding from the Federal and State Governments. To support its argument, petitioner cites Alessio Azzari, Inc. v. Commissioner, 136 T.C. 178 (2011).

In Alessio Azzari, Inc., a lender stopped lending money to the taxpayer after the Commissioner's settlement officer erroneously determined that the

[*13] Commissioner did not need to subordinate his lien on the taxpayer's accounts to the lender's lien on the same accounts. Id. at 181-183. As a result, the taxpayer was unable to stay current with its employment tax deposits after being in compliance for six consecutive quarters. Id. at 183. The Commissioner denied the taxpayer's installment agreement request because the taxpayer was no longer in compliance. Id. at 183-184. The Court held that it was an abuse of discretion for the Commissioner to deny the taxpayer's request for an installment agreement on the basis of the taxpayer's failure to stay current on its tax deposits because the SO's erroneous interpretation of law led to the lender's decision to stop lending money to the taxpayer, which led to the taxpayer's not being in compliance. Id. at 194.

Unlike the taxpayer in Alessio Azzari, Inc., petitioner was indisputably not in compliance when it requested an installment agreement. And because section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., is valid, SO Alcorte's interpretation was not erroneous. See Lindsay Manor I. SO Alcorte did not abuse her discretion in rejecting petitioner's installment agreement request on the grounds that petitioner was not in compliance.

Although SO Alcorte made a substantial mathematical error in determining petitioner's available net income, the Court finds that with respect to her decision

**[\*14]** to reject petitioner's installment agreement request, her error was harmless because that request could have been properly rejected for either of the two reasons discussed.  Had SO Alcorte properly noted petitioner's excess monthly income of $14,654.77, she could have properly rejected its proposed monthly installment payments of only $6,000.  See Boulware v. Commissioner, T.C. Memo. 2014-80 (finding no abuse of discretion in rejecting proposed installment agreement when taxpayer's ability to pay was twice the amount of the proposed payments), aff'd, 816 F.3d 133 (D.C. Cir. 2016).

B.     SO Alcorte's Balancing Analysis

Petitioner next argues that SO Alcorte either did not conduct the required statutory balancing test or did not explain her reason for concluding that its requirements were met.  Petitioner suggests that it "proposed a viable collection alternative that it could afford to pay on a monthly basis while staying current on its federal tax deposit payments that was less intrusive than enforced levy action".

It is well established that rejecting a collection alternative because of noncompliance with estimated tax payment requirements does not violate the proper balancing requirement.  See, e.g., Orum v. Commissioner, 123 T.C. 1 (2004), aff'd, 412 F.3d 819 (7th Cir. 2005); Friedman v. Commissioner, T.C. Memo. 2015-196; Schwartz v. Commissioner, T.C. Memo. 2007-155.  In

**[\*15]** preparation for the CDP hearing, SO Alcorte discovered that petitioner was not in compliance with its current employment tax deposit obligations for the taxable period ending June 30, 2014, and that it did not provide proof of making its required September 30, 2014, deposit. Accordingly, SO Alcorte's rejection of petitioner's installment agreement request for this reason is not an abuse of discretion. But noncompliance is not the only factor involved in the balancing requirement.

This Court found in Lindsay Manor I that the section 6330(c)(3)(C) balancing test properly takes into account a taxpayer's specific economic realities and the consequences of a proposed collection action. At the time petitioner requested this installment agreement, it had adequate net monthly income for monthly payments of $6,000. Petitioner's Form 433-B showed that its monthly income exceeded its monthly expenses for a net monthly income of $14,654.77. SO Alcorte, however, made a substantial mathematical error, reflected both in her case activity report and on the Form 433-B. This factual error, while harmless to SO Alcorte's denial of petitioner's installment agreement request, was consistently repeated. Cf. Sulphur Manor, Inc. v. Commissioner, T.C. Memo. 2017-95, at \*11 n.7 (finding harmless a poorly worded sentence in the SO's case activity report where the SO's notes elsewhere reflected proper calculation).

**[*16]** In certain circumstances a mathematical error can be harmless.  Id.  And in others excess income works in favor of the Government for purposes of this balancing test.  See id. at *11 n.7, *14.  Either could be true here.  But because SO Alcorte repeated her error and because there is nothing in the record reflecting a correction of that error, the Court finds that the balancing test under section 6330(c)(3)(C) could have been affected.

     C.     SO Alcorte's Impartiality

 Next, petitioner argues that SO Alcorte's review of the documents it provided before the CDP hearing violates its section 6330(b)(3) right to a CDP hearing by an Appeals officer who had no prior involvement with respect to the unpaid tax.

     Section 6330(b)(3) requires a CDP hearing to be "conducted by an officer or employee who has had no prior involvement with respect to the unpaid tax * * * before the first hearing".  Prior involvement exists only when (1) the taxpayer, the tax, and the tax period at issue in the CDP hearing also were at issue in the prior non-CDP matter and (2) the Appeals officer or employee actually participated in the prior matter.  Sec. 301.6330-1(d)(2), Q&A-D4, Proced. & Admin. Regs.

     Petitioner does not argue that SO Alcorte had prior involvement in an earlier, non-CDP matter; rather, it argues that, because she had reviewed

**[\*17]** petitioner's documents before the CDP hearing, SO Alcorte was not impartial. Petitioner is incorrect. The regulations clearly state that prior involvement means that an Appeals officer actually participated in an earlier, non-CDP matter. Id. Because petitioner does not assert that SO Alcorte participated in a prior non-CDP matter, its argument must fail.

SO Alcorte verified that she had not had any prior involvement with respect to the specific tax period at issue. Because SO Alcorte did not participate in a prior non-CDP matter concerning the same tax, taxpayer, and tax period at issue, she was an eligible Appeals officer to conduct the CDP hearing. Accordingly, the undisputed material facts establish that SO Alcorte did not abuse her discretion by reviewing the information petitioner had provided before its CDP hearing.

III.    Conclusion

Finally, petitioner argues that the Court should remand this case for additional consideration. The Court remands a CDP case to the IRS Appeals Office when the Court determines that a further hearing would be "helpful", "necessary", or "productive". Kelby v. Commissioner, 130 T.C. 79, 86 n.4 (2008); Lunsford v. Commissioner, 117 T.C. 183, 189 (2001); Churchill v. Commissioner, T.C. Memo. 2011-182. "[T]he further hearing is a supplement to the taxpayer's original * * * hearing, not a new hearing." Kelby v. Commissioner, 130 T.C. at

[*18] 86.  The purpose of a remand is not to afford a "do over" for a taxpayer whose missteps during the CDP process resulted in its collection alternative's being rejected.  See Kakeh v. Commissioner, T.C. Memo. 2015-103, at *13.  But because SO Alcorte mistakenly construed petitioner's financial condition and because there is no record of her correcting that substantial mathematical error, remand is appropriate for SO Alcorte to reconsider her balancing analysis in the light of the corrected facts and circumstances.

The Court will accordingly deny petitioner's motion for summary judgment, grant in part respondent's motion for summary judgment, and remand the remainder of this case to the IRS Appeals Office for reconsideration of the balancing test under section 6330(c)(3)(C) in relation to petitioner's corrected financial condition.

To reflect the foregoing,

An appropriate order will be issued.